566 F.2d 914
 2 Fed. R. Evid. Serv. 1242
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry BYNUM, John G. "Doc" Clark, Nuburn Hester and William
James Becker, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony D'ANGELO, and William James Becker, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
William James BECKER, and Charles Joseph Procacci,
Defendants-Appellants.
 Nos. 76-2973, 76-3085, 76-3015.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 26, 1978.
 
 Lex Taylor, Lakeland, Fla., for Bynum.
 Jack T. Edmund and John Robert Howes, Bartow, Fla., for Clark and Hester.
 John J. Chamblee, Jr., Tampa, Fla. (court-appointed), for Becker.
 D. Frank Winkles, Manuel M. Garcia, Tampa, Fla., for D'Angelo.
 Phillip Carlton, Jr., Thomas A. Wills, Tampa, Fla., for Procacci.
 John L. Briggs, U. S. Atty., Jacksonville, Fla., Terry A. Smiljanich, Asst. U. S. Atty., Tampa, Fla., for the U. S. in Nos. 76-2973 and 76-3085.
 J. V. Eskenazi, U. S. Atty., Miami, Fla., T. George Gilinsky, Sp. Atty., Criminal Appellate Section, Criminal Div., U. S. Dept. of Justice, Atlee W. Wampler, III, Organized Crime & Racketeering Section, Dept. of Justice, John J. Klein, Michael W. Farrell, Attys., U. S. Dept. of Justice, Washington, D. C., for the U. S. in No. 76-3015.
 Appeals from the United States District Court for the Southern District of Florida.
 Before BROWN, Chief Judge, RONEY and FAY, Circuit Judges.
 FAY, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 This decision encompasses numerous issues and numerous defendants involved in three trials in the district courts in Florida. The reason for their consolidation in one opinion is the existence of a common defendant who allegedly headed interstate auto theft rings operating in three cities in Florida Lakeland, Tampa, and Miami. We will discuss each case separately with references to the others where necessary. Reference to each case will be either by its case number or its location.
 
 II. 76-2973 LAKELAND
 
 2
 In January, 1976, a federal grand jury in Tampa, Florida, returned a twelve-count indictment charging seventeen defendants, for the period from February 1, 1975, to January, 1976, with engaging in the conduct of and conspiring to conduct an interstate auto theft and distribution ring in violation of 18 U.S.C. §§ 371, 2312, 2313, and 2.
 
 
 3
 Before trial, the nine defendants going to trial filed, inter alia, motions for severance alleging that the defendants would be denied a fair trial if they were tried en masse because of their numbers, the possibility of jury confusion and conflicts in their defenses. The motions for severance were denied.
 
 
 4
 At trial in May, 1976, defendant William Becker represented himself. The jury returned guilty verdicts against the nine defendants tried on the conspiracy count, returned various guilty and not guilty verdicts on the remaining substantive counts (two counts were dismissed by the court after the government's case), and a judgment of acquittal was entered by the court for one of the defendants on the conspiracy count.[1] Defendants Becker, Larry Bynum, John "Doc" Clark, Nuburn Hester, and George Gutridge appealed.
 
 
 5
 We find it unnecessary to set out the facts of 76-2973 in full. They are discussed when relevant to the issues raised by the appellants.
 
 A. William Becker
 
 6
 Defendant Becker first contends the trial court erred in denying motions and requests for access to legal materials and other tools with which to prepare his defense all in violation of his constitutional rights to adequate representation, a fair trial and due process of law. The record belies Becker's contentions.
 
 
 7
 The court revoked Becker's bond and he was incarcerated during trial. The trial judge upon motion specifically stated he would ". . . see that my materials are made available to you." (T. B-236).
 
 
 8
 Although prior to and during trial the defendant filed both handwritten and typewritten motions there is no indication that the hand-written motions were not given the careful consideration given to all other motions by the court.
 
 
 9
 The record further shows the steps taken by the court and the prosecution to assure the appearance of witnesses subpoenaed by Becker, even upon short notice, during the presentation of his defense. (Eg. T. F-156-64).
 
 
 10
 Although denial of access to legal materials can be a valid contention the record does not support this defendant's claim. See Haslam v. United States, 431 F.2d 362 (9th Cir. 1970); Martinez Rodriquez v. Jimenez, 409 F.Supp. 582 (D.P.R.1976).
 
 
 11
 Becker also suggests the trial court erred in denying his motion for mistrial based on his contention that the trial court commented in front of the jury on his right to testify.
 
 
 12
 One of the principal witnesses for the government was Marshall Lineberger. He and Becker had been associates. During Becker's cross-examination of Lineberger, Becker made repeated assertions of fact when he asked questions. The defendant made these assertions of fact five times and the court, upon proper objection, instructed the jury to disregard them. The court admonished Becker to refrain from these assertions. Thereafter, Becker made such statements four more times. The court then advised him as follows:
 
 
 13
 THE COURT: All right. Now, Mr. Becker, that was a statement on your part or a declaration. You said, 'I don't have any.'
 
 
 14
 MR. BECKER: Well, he said he gave me half. And I don't have half, Judge.
 
 
 15
 THE COURT: Well, I tell you, the time will come when, if you elect to do so, you may testify as a witness before the Jury, though, of course, you shall not be obliged to do so in any way whatsoever, or, for that matter, to call any witnesses at all.
 
 
 16
 But your position out there at the moment is to ask questions and not to testify or to state any assertions of fact or declarations of any kind. You understand that? (R. 291-292).
 
 
 17
 At this point, motions for mistrial were made by all defendants on the grounds that the court was commenting on a defendant's constitutional right not to testify. The motions were denied.
 
 
 18
 The Fifth Amendment to the Constitution of the United States provides in part that no person:
 
 
 19
 ". . . shall be compelled in any criminal case to be a witness against himself . . . ."
 
 
 20
 The Supreme Court held in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965):
 
 
 21
 . . . that the Fifth Amendment, in its direct application to the Federal Government, . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. (Footnote omitted)
 
 
 22
 Griffin, 380 U.S. at 615, 85 S.Ct. at 1233.
 
 
 23
 This court in United States v. Lepiscopo, 429 F.2d 258 (5th Cir. 1970), dealt with strikingly similar circumstances. In Lepiscopo, a pro se defendant while cross examining a witness was making side comments to the jury. "The trial judge stated: 'Don't make comments. You'll have your opportunity to be sworn and testify if you care to do so.' " Lepiscopo, 429 F.2d at 260. The court found in that case and we find in this case that:
 
 
 24
 (t)his did not constitute a comment on defendant's failure to testify but rather reflected his right to take the stand and testify under oath if he so desired.
 
 
 25
 Supra, p. 260. As in Lepiscopo, even if we were to find this a comment on the defendant's failure to testify, it was harmless error beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 B. Larry Bynum
 
 26
 Larry Bynum contends on appeal the trial court erred in allowing the government to cross examine Bynum's character witness regarding his knowledge of two incidents of misconduct by this defendant.
 
 The two questions asked were:
 
 27
 Q. (H)ave you heard that on January 10, 1976, that Larry Bynum stole a Piper Aztec airplane from Lakeland Municipal Airport in Lakeland, Florida? (R. G-68).[2]
 
 
 28
 Q. (H)ave you heard that Larry Bynum planned to steal a trailer load of hams from Publix Supermarkets during the end of January, 1976? (R. G-70).
 
 
 29
 Before asking these questions the government proffered to the court the basis for each of these questions and after the questions were asked the court properly instructed the jury concerning its use of such evidence. This court has recently held:
 
 
 30
 Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony . . . Courts have imposed two important limitations upon judicial discretion in admitting inquiries concerning such prior misconduct: first, a requirement that the prosecution have some good-faith factual basis for the incidents inquired about (Citations omitted) and second, a requirement that the incidents inquired about are relevant to the character traits involved at the trial.
 
 
 31
 United States v. Wells, 525 F.2d 974, 976-977 (5th Cir. 1976). See also United States v. Franklin, 471 F.2d 1299 (5th Cir. 1973), (citing Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Bynum's
 
 
 32
 contention that the trial court erred is without merit. C.
 
 
 33
 William Becker, Larry Bynum, Nuburn Hester, and
 
 John G. "Doc" Clark
 
 34
 Each of the above defendants assign error to the denials of their motions for severance.
 
 
 35
 Becker contends the complexity of this case including the length of the trial (almost three weeks), the number of defendants (nine) and the number of stolen vehicles involved (approximately six) required a severance. He also suggests his defense and Bynum's were antagonistic.
 
 
 36
 Bynum, Hester and Clark contend that Becker's pro se representation and his conduct at trial gave rise to the necessity for a severance or mistrial.
 
 
 37
 Denial of motions for severance under Rule 14, Federal Rules of Criminal Procedure,[3] is reviewable only for an abuse of discretion by the trial court.[4] A district court's ruling will only be overturned upon a showing by the defendant that actual prejudice resulted from a denial of a severance. United States v. Partin, 552 F.2d 621 (5th Cir. 1977).
 
 
 38
 This court's view on severances for complexity and possible jury confusion was astutely analyzed in United States v. Morrow, 537 F.2d 120 (5th Cir. 1976). Judge Thornberry stated:
 
 
 39
 In reviewing a claim of undue complexity and confusion, an appellate court looks to the totality of the circumstances in striking a balance between the interest in judicial economy and the need to protect the rights of the individual defendant. A joint trial of twenty-three (nine in this case) defendants, charged with conspiracy and numerous substantive counts, clearly raised the possibility that the jury might cumulate the evidence introduced by the Government on all counts and against all defendants to find guilty a defendant whose connection with the conspiracy was at best marginal. The pernicious effect of cumulation, however, is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the Government. The remedy of severance is justified only if the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction. Where the Government charges a single conspiracy, as it did here, much of the evidence introduced ultimately bears, at least indirectly, on the agreement of the co-conspirators. Once the Government has satisfactorily established the existence of the conspiracy, the same evidence used to convict a particular defendant is admissible against all co-defendants shown to be members of the conspiracy. Given this state of affairs, the interest in judicial economy understandably exerts strong pressure in favor of a joint trial. (Footnotes omitted)
 
 
 40
 United States v. Morrow, 537 F.2d at 136.
 
 
 41
 As in Morrow, the trial judge in this case clearly instructed the jury so as to minimize any possibility that the jury might improperly cumulate the evidence.[5] Appellant Becker has not demonstrated any instance of prejudice so severe to require us to find an abuse of discretion. The defendant Becker was not denied a fair trial.
 
 
 42
 Becker further urges that the trial court should have granted his motion for severance based upon antagonistic defenses. In United States v. Johnson, 478 F.2d 1129 (5th Cir. 1973), this court found an abuse of discretion by a trial judge for denying defendant-Johnson's motions for severance where at every opportunity Smith, the co-defendant, and Smith's attorney implicated Johnson. The prejudice requiring reversal was clear.
 
 
 43
 An examination of the record fails to support any claims of prejudice in this case. Becker claimed through his witnesses that he was in the automobile recovery business and had done business with automobile insurers. Bynum's testimony did not contradict this defense. Bynum stated he learned through Marshall Lineberger (the government's witness) the cars he was leasing were stolen. At the same time, Bynum stated to Lineberger he would turn Becker in to the F.B.I. if he did not return his money. Lineberger's response was he would "handle" Becker because he had "beaten him out of a lot of money." Bynum believed Becker was in the automobile leasing business. We find insufficient prejudice to compel a severance and, therefore, no abuse of discretion by the trial judge.
 
 
 44
 Defendants Clark, Hester and Bynum contend Becker's pro se representation and his conduct at trial gave rise to prejudice requiring mistrial or severance.
 
 
 45
 In particular, defendant Bynum objects to questions asked of him during cross-examination by Becker. The questions concerned the trailer load of hams discussed above. Bynum was not required to answer the questions and the jury was instructed to disregard them. No further mention of the "hams" was made. We find any prejudice Becker's improper questions might have caused was remedied by the court's sustained objections and instructions to the jury to disregard them.
 
 
 46
 Defendants Clark and Hester suggest Becker, who had elected to represent himself, was resigned to a conviction. They allege his cross-examination of government witnesses continually brought out incriminating facts and his cross examination of Bynum, the only defendant to take the stand, was so chilling and cutting as to cause the other defendants to refrain from testifying. After reviewing the record we again find no compelling prejudice produced by Becker's conduct to require a severance. Although Becker's cross examination of Bynum seems to be an attempt to hurt Bynum's case, Bynum's responses in most instances incriminated Becker himself. We do not find an abuse of discretion by the trial judge.
 
 D. George Gutridge
 
 47
 Although Gutridge filed a notice of appeal and a brief in this matter, he has since dropped his appeal. Therefore we will not deal with the issues raised by him.
 
 III. 76-3085 TAMPA
 
 48
 In January, 1976, an eleven count indictment was returned against ten defendants including William Becker and Anthony D'Angelo, charging them with conspiring to transport and receive stolen motor vehicles traveling in interstate commerce and several substantive counts of transporting or receiving those motor vehicles. 18 U.S.C. §§ 371, 2312, 2313, 2.
 
 
 49
 Before trial, the district court heard oral arguments on pending motions including a motion for severance filed by defendant D'Angelo. The motion for severance was denied with leave to raise it again during trial.
 
 
 50
 After guilty pleas were accepted and dismissals entered as to some defendants the trial proceeded against defendants, Becker, D'Angelo, and Schofield. Immediately following the jury selection the court advised the parties it intended to give a series of preliminary instructions (copies were given to counsel) to the jury to aid them in following the evidence and allowed the parties overnight to prepare proposed preliminary instructions. The proposed instructions were considered and rejected. The court then gave the preliminary instructions to the jury before opening statements and over the objections to portions of them by D'Angelo. The court gave complete final instructions to the jury upon the close of the evidence and arguments. The jury returned verdicts of guilty against all three and specifically Becker on the conspiracy and seven substantive counts and D'Angelo for the conspiracy and one substantive count.
 
 
 51
 D'Angelo received two years imprisonment on each count to run concurrently. Becker received five years on each of six of the substantive counts to run concurrently to each other and concurrently to sentences given in the Miami case (76-3015). On the conspiracy count and the seventh substantive count he was given five years each to run concurrently to each other but consecutively to the confinement imposed in the Miami case.
 
 
 52
 Again we will not discuss the facts except those relevant to the issues raised by appellants.
 
 A. William Becker
 
 53
 This defendant again assigns as error the trial court's denial of his motions for severance in the presence of sweeping conspiracy allegations which might cause jury confusion. With fewer defendants involved and fewer counts charged than in 76-2973 and no specific instance specifically cited by Becker to indicate the compelling prejudice required to find an abuse of discretion by the trial court, we affirm the denial of Beckers' motions for severance in this case also.
 
 
 54
 Becker further contends the trial court erred in not excluding evidence of his transporting solely intrastate a stolen motor vehicle which was so prejudicial as to require a reversal. This contention has no merit. Evidence of a prior similar act of a defendant is admissible to show intent, preparation or plans relating to a charge of conspiracy. United States v. Levine, 546 F.2d 658, 669 (5th Cir. 1977); United States v. Banks, 465 F.2d 1235, 1243 (5th Cir. 1972); United States v. Bullock, 451 F.2d 884, 889 (5th Cir. 1971). The same evidence can also be used to show a common scheme, plan, design or intent. Levine, 546 F.2d at 669.
 
 
 55
 Becker again contends he was denied access to legal materials to prepare his defense. Again he was provided daily access to a legal library in the courthouse before and during trial. No incidents of denial are cited by Becker. Equal consideration was given to both Becker's typed motions and his handwritten motions. We find no impairment of this defendant's Sixth Amendment rights.
 
 
 56
 Defendant Becker lastly contends the trial court erred in denying his motion to dismiss the conspiracy charge prior to trial and in denying his motion for mistrial during the trial. He suggests this second trial for conspiracy put him in jeopardy twice for the same offense charged in the conspiracy charge in 76-2973 (Lakeland) in violation of the Fifth Amendment to the Constitution of the United States.
 
 
 57
 Our affirmance of all other counts in this case against Becker allows us to apply the concurrent sentence doctrine. United States v. Stone, 472 F.2d 909, 915-916 (5th Cir. 1973); United States v. Bearden, 423 F.2d 805, 811 (5th Cir. 1970). Becker was sentenced to concurrent five year terms on Counts I and VI. Therefore because we are affirming Count VI, the concurrent sentence doctrine renders it unnecessary for us to consider Count I's double jeopardy issue.B. Anthony D'Angelo
 
 
 58
 D'Angelo raises several issues on appeal.
 
 
 59
 The first is whether the trial court properly limited his cross-examination of a government witness with respect to prior convictions and alleged acts not resulting in conviction.
 
 
 60
 The government witness, William Reno, who was also a coindictee, testified at trial. In 1964, he was convicted of conspiracy to harbor and conceal aliens and was sentenced to two and one-half years imprisonment. This fact was brought out by the government on direct examination and explored by defense counsel on cross examination. During a bench conference, counsel discussed with the court two other convictions, one for worthless checks sixteen years before and the other for obtaining property under false pretenses twenty years before. Over objection, the court disallowed inquiry by defense counsel into these two older convictions.
 
 
 61
 Rule 609(b) of the Federal Rules of Evidence governs the use of prior felony convictions for impeachment of witnesses. The Rule provides:
 
 
 62
 Time Limit Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .
 
 
 63
 D'Angelo had opportunity to cross examine Reno to test his credibility through use of one prior conviction. Nothing further was offered to show an abuse of discretion by the court. We affirm the court's decision.
 
 
 64
 D'Angelo also contests the court's prohibiting inquiry on cross examination of an alleged incident in which Reno held foster children against their will to work at his racetrack. Defense counsel proffered this and Reno denied it. Admissibility of this type of evidence is governed by Rule 608(b) of the Federal Rules of Evidence:
 
 
 65
 Specific instances of conduct Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . . .
 
 
 66
 To determine the admissibility of this evidence we must decide whether it is probative of the truthfulness of the witness. If allowed, the jury would have been presented with an accusation and a denial and no extrinsic evidence would have been allowed. The trial judge did not abuse his discretion and properly denied admission of this evidence once he determined it would have no probative value.
 
 
 67
 Prior to commencement of the receipt of evidence the court advised counsel that it was going to give preliminary instructions to the jury. The parties were given time to submit proposals which D'Angelo chose to do. They were rejected by the court and the court gave its preliminary instructions over the objection of defense counsel. These instructions to the jury included an explanation of the order of presentation of evidence, the right of attorneys to make objections, that the indictment is not evidence in the case, and its duty to give each defendant separate consideration on each charge against him. The court also explained the essential elements of a conspiracy charge, the meaning of willful and intentional conduct and how the jury was to consider hearsay evidence made during the course of an alleged conspiracy. The essential elements of the substantive counts and the definitions of terms such as "interstate commerce", "stolen" and the conjunction "and" as used in the statutes were given. The court explained the provisions of the aiding and abetting statute, 18 U.S.C. § 2, alleged in the indictment, the requirement of proof of specific intent and knowing conduct, the meaning of reasonable doubt, and their duty to carefully weigh the evidence presented.[6]
 
 
 68
 Defendant D'Angelo assigns error to the judge's giving these preliminary instructions. We disagree.[7]
 
 
 69
 Although it is difficult for the courts to give preliminary jury instructions in all cases, it is not only not error to do so, it is a well-reasoned modern trend to give instructions outlining the issues and the law involved prior to the taking of testimony. We, therefore, find no merit in defendant's argument.
 
 
 70
 The third issue raised by D'Angelo is whether the district court erred by not requiring the government to produce co-defendant Lineberger who was in protective custody and listed as a key government witness. D'Angelo cites and we find no authority requiring production of a witness by the government for an interview except approved depositions. The trial court properly denied this motion to produce the witness. D'Angelo also contends his motion to depose witness-Lineberger under Rule 15 of the Federal Rules of Criminal Procedure was improperly denied. Rule 15 provides:
 
 
 71
 (a) When Taken. Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition . . . .
 
 
 72
 D'Angelo argues the "exceptional circumstances" in this case to be the substantial likelihood Lineberger would not be available for trial.
 
 
 73
 Lineberger was in the protective custody program of the United States Marshal's Service but as clearly reflected in the record, available for anyone who wished his testimony. During the trial, the court stated at one point that D'Angelo could subpoena Lineberger (T. 814) and later, the court stated that Lineberger was available to D'Angelo as an adverse witness if he wished to call him as one. (T. 988) D'Angelo's counsel requested government counsel to keep Lineberger in town during the presentation of his case so that he would be available. The government responded he was in town and available. (T. 1003) Again, after the government rested its case, the court asked the government if Lineberger was available to the defendants to which an affirmative response was given. (T. 1075).
 
 
 74
 It is abundantly clear that Lineberger was available for trial and D'Angelo's motion to depose was for discovery as opposed to perpetuation of his testimony.
 
 
 75
 The last issue D'Angelo raises is (as stated in his brief):
 
 
 76
 The court erred in refusing to grant defendant a severance where a co-defendant (Becker) would have offered significant exculpatory testimony at a separate trial, and the government prevented the co-defendant (Becker) from testifying because co-defendant was wrongly joined in this case as a co-defendant where it was obvious that co-defendant was being tried twice for same offense.
 
 
 77
 Defendant Becker's affidavit supporting D'Angelo's claim of exculpatory testimony stated Becker would testify:
 
 
 78
 1. That he is acquainted with the allegations in the above-styled cause, and that he is personally familiar with the matter set forth in this affidavit.
 
 
 79
 2. That on or about March 4, 1975, he borrowed a certain sum of money from Anthony D'Angelo and that he pledged as collateral a 1975 Lincoln Mark IV Vehicle Identification No. 5Y89A855086.
 
 
 80
 3. That at the time said automobile was pledged as security for said loan, Anthony D'Angelo had no knowledge that said automobile was stolen.
 
 
 81
 4. That he, WILLIAM JAMES BECKER, does not intend to testify on his own behalf during the trial of the above styled cause.
 
 
 82
 At first blush the affidavit appears to be legally insufficient under Byrd v. Wainright, 428 F.2d 1017 (5th Cir. 1970), and the trial judge properly decided so but we pretermit any further discussion of this issue under the concurrent sentence doctrine.
 
 
 83
 D'Angelo was convicted of two counts in this indictment. The first was a conspiracy count and the second was a substantive count of receiving stolen property transported in interstate commerce, i. e., a white 1975 Mark IV Lincoln (the same mentioned in Becker's affidavit). D'Angelo was sentenced to two years imprisonment on each count to run concurrently.
 
 
 84
 Assuming the affidavit was sufficient it only contained exculpatory evidence as to the substantive count and there is no claim that the evidence used to prove the conspiracy count was not sufficient. Therefore the concurrent sentence doctrine renders it unnecessary for us to consider D'Angelo's possible right to Becker's testimony. United States v. Stone, 472 F.2d 909, 915-916 (5th Cir. 1973); United States v. Bearden, 423 F.2d 805, 811 (5th Cir. 1970).
 
 
 85
 Finding no merit in the issues raised as to the Tampa case we affirm the judgment of the district court.
 
 IV. 76-3015 MIAMI
 
 86
 In March, 1975, a twelve count indictment was returned against eight defendants charging them with engaging in the conduct of and conspiracy to conduct an interstate automobile theft and distribution ring in violation of 18 U.S.C. §§ 371, 2312, 2313, and 2. Charges were dismissed against three of the defendants and another three pled guilty before trial. William Becker was charged in all counts but the twelfth, had counts one through five dismissed (including the conspiracy count) and was convicted of six substantive counts. Charles Procacci was tried and convicted of four substantive offenses and the count for conspiracy. They both filed notices of appeal to this court.
 
 
 87
 We will again not discuss the facts except as they relate to the issues raised by appellants.
 
 A. William Becker
 
 88
 Defendant Becker raises two issues in this case. The first is that a severance from Procacci's trial was required to preserve his right to a fair trial by preventing substantial prejudice. The second issue is whether the trial court committed plain error when it permitted testimony from government witness Brewer without instructing the jury that the admissibility of the testimony was dependent upon a finding of fact to be made by the jury.
 
 
 89
 Becker claims he was entitled to a severance because the evidence which established his participation with Procacci in a conspiracy to transport and sell stolen automobiles confused the jurors and created a danger of guilt by association because the conspiracy charge had been dismissed as to Becker and because he and Procacci presented antagonistic defenses.
 
 
 90
 Becker has again failed to show this court the "compelling prejudice" which would require reversal of his conviction. United States v. Scallion, 533 F.2d 903, 913 (5th Cir. 1976); United States v. Perez, 489 F.2d 51, 65 (5th Cir. 1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). Granting a severance is within the discretion of the trial court and we find no clear showing by Becker of abuse of that discretion. Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed.2d 101 (1954).
 
 
 91
 In particular Becker contends the court erred in not granting a severance where, in a separate trial on only the substantive counts against him, declarations attributed to his co-defendant Procacci[8] which supported the existence of a conspiracy would not have been admissible against him.
 
 The Fifth Circuit has held that:
 
 92
 . . . the admissions and statements of a co-defendant are admissible as against the other defendant, even in the absence of a conspiracy count, where there is independent evidence of a concert of action.
 
 
 93
 Park v. Huff, 506 F.2d 849, 859 (5th Cir. 1975), cert. denied, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40; See also United States v. Snyder, 505 F.2d 595, 600 (5th Cir. 1974), cert. denied, 420 U.S. 993, 95 S.Ct. 1433, 43 L.Ed.2d 676.
 
 
 94
 There is ample non-hearsay evidence in the record to show Procacci and Becker knew each other and were participating in an illicit association or conspiracy at the time Procacci made the statement. With the overwhelming evidence of a concert of action between Becker and Procacci, we find even if Becker had been severed this statement would have been admissible in a trial against only him on the substantive counts.
 
 
 95
 Assuming arguendo Becker was correct and this statement would not be admissible against him in a separate trial, we find overwhelming evidence of guilt on the substantive charges and admission of this statement into evidence was in this case harmless error beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967).
 
 
 96
 Becker's suggestion that he should have been severed due to possible jury confusion is without merit and bears little discussion. The Miami trial involved only two defendants and four days of trial in which Becker shows no instances of confusion.
 
 
 97
 This defendant's contention that a severance was required because he and Procacci presented antagonistic defenses is also without merit. Procacci presented no witnesses and Becker called in his behalf one witness who invoked the Fifth Amendment and he took the stand himself. Procacci's defense was that the government failed to prove he knew the property received was stolen. Becker denied any involvement whatsoever. Procacci did not testify to Becker's involvement and the only witness who supported Procacci's defense of lack of knowledge was the government's witness, William Briskin. The alleged conflict came when Procacci did not attempt to impeach this witness and Becker did.
 
 
 98
 We find Procacci's failure to challenge Briskin's credibility did not interfere with Becker's defense. Becker was given ample opportunity to cross-examine and attack Briskin's testimony incriminating him. Procacci offered no testimony to show Becker was involved in the transportation or sale of the four stolen automobiles involved in this case. Procacci made no attempt to shift culpability to Becker but sought only to show his own innocent intent. It was also not essential to Procacci's defense that the jury find Becker guilty of the substantive offenses. The defenses were not mutually exclusive and antagonistic. See United States v. Wilson, 500 F.2d 715 (5th Cir. 1974).
 
 
 99
 Becker lastly contends the trial court erred in failing to strike the testimony of government witness Perry Brewer because he was unable to identify Becker although he testified about Becker by name. In the alternative he suggests it was plain error for the court not to have instructed the jury that the testimony was inadmissible unless the jury found as a matter of fact the "Mr. Becker" Brewer referred to was the same as the Becker on trial.
 
 
 100
 Perry Brewer testified concerning several meetings he had with Becker and various other persons during which Brewer negotiated, purchased, and obtained the vehicle registration for a stolen 1975 Mark IV. Brewer testified to one meeting in particular at which he and his wife, Ben Matchett, Joe Horovitz and Mr. Becker were present. The meeting took place at a Miami auto tag agency and Becker obtained a vehicle registration for the newly delivered Mark IV. When asked during his testimony, Brewer was unable to identify Becker.
 
 
 101
 After direct examination Becker moved to strike the testimony. The government responded they had another witness, Ben Matchett, who would corroborate Brewer's testimony concerning this meeting and identify Becker. The court denied the motion and ruled that any question as to whether Brewer had really dealt with Becker was to be determined by the jury as the finders of fact. The government subsequently put Ben Matchett on the stand and he corroborated Brewer's testimony and identified Becker as being present at the meeting described by Brewer.
 
 
 102
 We find the trial judge correctly ruled that Brewer's credibility was a question for the jury. Similar circumstances occurred in United States v. Murray, 527 F.2d 401 (5th Cir. 1976). In that case there was one positive identification of the defendant, corroborating evidence which placed him at the scene at the proper time and one erroneous identification of the defendant. This court stated "(t)he jury is free to believe the testimony of one witness and reject the testimony of another." See also Smith v. United States, 358 F.2d 695 (5th Cir. 1966), cert. denied, 384 U.S. 971, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966).
 
 
 103
 In the case at bar the jury had testimony which easily placed Becker at the auto tag agency. Brewer's inability to identify Becker was a factor the jury would have to consider in determining whether to give his testimony credence.
 
 
 104
 The failure of the court to give a special instruction concerning the jury's duty to make a finding of fact as to Becker's presence and if not to disregard Brewer's testimony was not error. The trial court sufficiently instructed the jury on its duty as the triers of fact, the determination of the credibility of a witness, the weight of the evidence, and their determination whether to reject all or any part of a witness' testimony.
 
 B. Charles Joseph Procacci
 
 105
 Procacci raises six issues on appeal. The first is whether the trial court erred in denying his motion to strike certain testimony given by two government witnesses.
 
 
 106
 Procacci objects to the admission of testimony by Brewer of statements made by Becker,[9] concerning how they could obtain heavy equipment. Brewer was in the business of renting heavy equipment to electrical contractors. Becker made this statement during a meeting between Becker and Brewer in which Becker agreed to sell Brewer a stolen Mark IV.
 
 
 107
 We find this testimony was admissible against Becker under Park v. Huff, supra. Its admissibility against Procacci is not in question. Twice, before Brewer testified, the trial court instructed the jury this testimony was not admissible against Procacci. Brewer even testified he did not know Procacci. The trial judge handled this problem correctly. We also find the circumstances before the jury were not so confusing and prejudicial that the court's instructions were not adequate.
 
 
 108
 The other testimony objected to was that given by government witness, Robert Clayton, in which he stated Becker told him Procacci was incompetent, couldn't do anything he's supposed to, was an old woman, was always in a state of paranoia, and he didn't know why he paid him. Procacci contends these statements were expressions of dissatisfaction with a person, not a statement made in furtherance of the conspiracy, and therefore not admissible.
 
 
 109
 We disagree with defendant Procacci's evaluation of this testimony. Becker's statements were obviously made in furtherance of the conspiracy. Becker, a co-conspirator, was showing Clayton how stolen cars were registered and sold without a title. Becker was attempting to recruit Clayton to join his auto theft business. Clayton's meeting with Becker took place in 1975 and the conspiracy Procacci was charged with lasted from July 1, 1974 until February 1, 1976. Independent evidence of the existence of a conspiracy and Procacci's connection to it are not in question. See Rule 801(d)(2)(E), Federal Rules of Evidence. This testimony was properly admitted into evidence and we find no merit in Procacci's argument.
 
 
 110
 Procacci also argues the same issue raised by Becker on the failure of the trial court to instruct the jury on the admissibility of Brewer's testimony without an identification of Becker was dependent upon a finding of fact to be made by the jury. Further discussion is unnecessary. There was no error by the trial court.
 
 
 111
 The next assignment of error is that the trial court committed plain error in failing to instruct the jury that co-defendant Becker's testimony was inadmissible against Procacci. Procacci suggests the testimony was prejudicial and was given only for the purpose of establishing Becker's own defense. He also argues that even though no instruction was requested, the failure to instruct sua sponte was fundamental error and denied him a fair trial. He cites no law to support his contention.
 
 
 112
 Becker's testimony which contained numerous references to his own criminal convictions and activities, did not incriminate Procacci. At one point Becker stated, "Mr. Procacci, who is sitting at that table, is a friend, and I state this openly, that he has nothing to do with the theft of transporting, receiving, storing these automobiles, nor has he entered into any conspiracy with the men that you have met here today." (T. 505)
 
 
 113
 There is no merit to the contention this testimony was inadmissible as to Procacci. He had the right to cross examine[10] Becker of which he failed to avail himself.
 
 
 114
 In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court found the hearsay confession of a co-defendant incriminating a defendant and testified to by a government witness was not admissible because the co-defendant had no right to cross-examine the defendant-declarant. The suggestion that a co-defendant's own non-hearsay testimony which does not incriminate the defendant except at his suggestion through guilt by association is ludicrous. The failure to instruct the jury as to the testimony's admissibility as to Procacci is not error, much less plain error.
 
 
 115
 Denial of severance grounded on the same contentions was also not error. See United States v. Silvers, 425 F.2d 707, 708-709 (5th Cir. 1970).
 
 
 116
 Another assignment of error by Procacci is the denial of a severance based on conflicting defenses as shown by William Briskin's testimony (discussed above). Again we state the denial of a motion for severance is within the sound discretion of the trial court and an abuse of discretion will be found only when the defendant shows compelling prejudice results. United States v. Partin, 552 F.2d 621 (5th Cir. 1977). Procacci has not met his burden. Any prejudice which might have resulted from Briskin's testimony resulted from Becker's attempt to impeach Briskin during cross examination. After a fair reading of the record we find Becker's attempts resulted in no substantial impeachment and any resulting prejudice was not sufficient to compel the granting of a severance.
 
 
 117
 Procacci further suggests a severance should have been granted because there was cumulative prejudice from all the instances cited above by Procacci and due to the guilt by association theme of the government's case. We have already found the trial court did not abuse its discretion in denying the innumerable motions for severance and cumulating any prejudice there might have been does not change our decision. Use of guilt by association to establish guilt might be reason to require a severance in some cases. However, in this case there was overwhelming evidence of Procacci's guilt and any prejudice resulting from the inadvertent use of this theme was harmless.
 
 
 118
 Procacci also asserts error in the trial court's failure to hold a pre-trial hearing to determine the existence of a conspiracy and thereafter to determine the admissibility of certain evidence. We find this assertion meritless.
 
 
 119
 Without rehashing all the issues raised in these appeals we conclude the judgments of conviction should be affirmed in all three cases.
 
 
 
 [1]
 The judgment of acquittal was granted to Roy Wilson based upon insufficiency of the evidence
 
 
 [2]
 To the surprise of the government Bynum's character witness had heard of the Piper Aztec incident
 
 
 [3]
 Rule 14 provides:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.
 
 
 [4]
 United States v. Smith, 550 F.2d 277 (5th Cir. 1977); United States v. Schilleci, 545 F.2d 519 (5th Cir. 1977); Tillman v. United States, 406 F.2d 930 (5th Cir. 1969)
 
 
 [5]
 COURT: "I will, of course, give you additional instructions at the end of the trial concerning the law of conspiracy, but, as I stated a moment ago, there are some principles which you should know at this time concerning your consideration of the testimony and evidence presented during the course of this trial
 With respect to the conspiracy offense as alleged in Count One of the Indictment, you should first determine from all of the testimony and evidence to be adduced in the case whether or not the conspiracy existed as charged.
 If you conclude that a conspiracy did exist as alleged in the Indictment, you should next determine whether or not the Defendant under consideration willfully became a member of such conspiracy.
 In determining whether a Defendant was a member of an alleged conspiracy, however, the Jury should consider only that evidence, if any, pertaining to his or her own acts and statements. A Defendant cannot be bound by the acts or statements of other alleged participants until it is established beyond a reasonable doubt, first, that a conspiracy existed as alleged and, second, from evidence of his or her own acts and statements that the Defendant was one of its members.
 So until it has been determined that a conspiracy existed and that the Defendant under consideration was one of its members, evidence of any statement made or act done by another person may not be considered as evidence against any Defendant who was not present to hear the statement made or see the act done. On the other hand, if and when it does appear, if it should so appear, beyond a reasonable doubt from the evidence in the case that a conspiracy did exist as alleged, and that the Defendant under consideration was one of its members, then the statements and acts thereafter knowingly made and done during such conspiracy and in furtherance of its objects by any other proven member of the conspiracy may be considered by the Jury as evidence against the Defendant under consideration, even though he was not present to hear the statements made or see the acts done." (T. C-158-159).
 This instruction was repeated at least two more times (T. 47-48; E-41-44; H-212-216)
 
 
 [6]
 At the conclusion of the case and after closing arguments complete final instructions were given to the jury; that is, repeating and adding to the ones above
 
 
 [7]
 We have found no previous Fifth Circuit decisions on this issue but certainly it is the obligation of the court to do all within its power to assist the jury in understanding the issues involved and the application of the law. Such preliminary instructions seem very appropriate in just such a case
 
 
 [8]
 The testimony objected to was made by witness Lineberger when he was discussing delivering stolen cars for Mr. Procacci:
 Q. What did Mr. Procacci tell you about Mr. Becker in that conversation?
 A. That Mr. Becker was in the stolen car business. (T. 342)
 
 
 [9]
 Brewer: Mr. Becker told me that he had a means of getting equipment off the docks up North, that they had been taking quite a bit of it and that it was a large ring, that there was a lot of politicians involved and there was you know, you might as well get on it and take advantage of it
 So I listened to him about the heavy equipment. He said that they were taking their heavy equipment off the docks and selling it for like twenty or twenty-five per cent of its value.
 He had more of a story on how it was supposedly shipped overseas, that we were donating America was donating to foreign countries, and it was just a lot of graft. (R. 105-106).
 
 
 [10]
 The judge made comments after Becker's narrative direct testimony
 "Mr. Lazzara, I assume that you have no cross because of no possible conflict here." (T. 508). "Well, I don't know that a cross examination is proper. If he had said anything that is in conflict with your defense or in some way jeopardizes your client, it would be. I will let you do it if you want to." (T. 509).
 Procacci did not cross examine. No objections were made to these comments and the prejudice derived, if any, was not sufficient to raise these comments to the level of plain error.