**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Byron WOLFORD, a/k/a "Cowboy Wolford", Defendant-Appellant.**

No. 79–5357.

United States Court of Appeals,
Fifth Circuit.

March 27, 1980.

William A. Bratton, Frank S. Wright, Dallas, Tex., for defendant-appellant.

John W. Sweeney, Jr., Jimmy L. Tallant, Asst. U.S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before HILL, KRAVITCH, and THOMAS A. CLARK, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In 1978, Special Agent Richard Labredo, a criminal investigator for the Internal Revenue Service, and Don Evans, an investigator for the Tarrant County, Texas District Attorney's office were working together on an investigation into possible violations of federal bribery and gambling statutes. Labredo's function was to play the role of a corrupt special agent who was willing to accept money in return for which he would inform the payor of impending raids and investigations. Appellant Wolford, who had conducted illegal dice games at his home,[1] was alleged to have met with Labredo, Evans, and Curtis G. Garrett on the night of October 16, 1978 and offered

1. The defendants and the government entered into a stipulation that if John R. Patterson were called as a witness he would testify that he attended a dice game at Wolford's home on September 22, 1978.

Labredo $500.00 per game for the above services.

Wolford was charged in a one-count indictment with violating the federal bribery statute, 18 U.S.C.A. § 201(b)(2), (3). He was tried with Garrett, who was charged in the same indictment with the same offense. After a jury trial, Wolford was convicted and sentenced to 4-years imprisonment and fined $2,500.00.[2] This appeal followed.

## I. Severance

Prior to and during the trial, Wolford made numerous motions for severance, all of which were denied. He now contends that it was unfair to try him with Garrett because the amount of evidence offered by the government as to him was *de minimus* in comparison to the evidence offered against Garrett. More specifically, it is urged that the overwhelming evidence of Garrett's guilt handicapped Wolford in his efforts to establish an entrapment defense, of which lack of predisposition to commit the crime is a key ingredient.

Motions for severance are governed by Rule 14 of the Federal Rules of Criminal Procedure. In ruling on such a motion, the trial judge must weigh the likelihood of prejudice against the interests of judicial economy. *United States v. Cuesta*, 597 F.2d 903, 919 (5th Cir. 1979). The disposition of a Rule 14 motion is left to the discretion of the trial judge, and his decision will be disturbed only where the defendant can show "specific and compelling prejudice." *United States v. Morrow*, 537 F.2d 120, 138 (5th Cir. 1976); *accord, United States v. Herring*, 602 F.2d 1220, 1225 (5th Cir. 1979); *United States v. Rhodes*, 569 F.2d 384, 390 (5th Cir. 1978); *United States v. Bynum*, 566 F.2d 914, 920 (5th Cir. 1978); *United States v. Crockett*, 514 F.2d 64, 70 (5th Cir. 1975).

The record shows that there was, indeed, more evidence offered of Garrett's predisposition to bribery than of Wolford's. There was substantial evidence that Garrett had bribed the agents on behalf of himself, had introduced the agents to Wolford, and had acted as an intermediary with respect to a number of others who sought protection. The evidence against Wolford was offered first, and was separate from the mass of predisposition evidence offered against Garrett. When the evidence against Garrett was offered, the district judge admonished the jury not to consider it against Wolford. The district judge handled the situation properly. Although cautionary instructions were required on at least 27 occasions, the fact that they were given when necessary is evidence that Wolford adequately was protected from the potential prejudice of a joint trial. *See, e. g., United States v. Cuesta*, 597 F.2d 903, 919 (5th Cir. 1979); *United States v. Bynum*, 566 F.2d 914, 920 (5th Cir. 1978). Under these circumstances, we cannot say that the trial court abused its discretion in refusing to grant severance.

## II. The Prosecutor's Closing Argument

The defendant's next argument is that he was prejudiced by a comment made by the prosecutor during his closing argument to the jury. During the trial, Evans and Labredo testified about Wolford's offer of money at the October 16th meeting. Their testimony was, in some respects, in conflict with the testimony of Dace Smith, who had been called by Garrett. Near the end of his closing argument, the prosecutor made the following statement to the jury:

> Well, Ladies and Gentlemen, I am willing to rely on the credibility of those two law officers as to what they saw and what they did, any day against the testimony of somebody like Dace Smith.

Supp. Record at 31.

Defense Counsel objected and a cautionary instruction followed:

> This is not testimony. As I told you, the attorneys have the right to draw their conclusions and their inferences from what they think the evidence has shown. And I instruct you not to con-

---

2. Garrett also was convicted and sentenced, but is not a party to this appeal.

sider the testimony from the prosecutor. That is not testimony in any way.

Supp. Record at 32.

■ The problem of improper comments by a prosecutor is not a new one in this Circuit. We have on numerous occasions reiterated the rule that, while an attorney may urge a conclusion upon the jury, he may not express his personal opinion to the jury.[3] *See, e. g., United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978); *United States v. Diharce-Estrada*, 526 F.2d 637, 641–42 (5th Cir. 1976). In this case, the prosecutor violated the rule by expressing his view on the credibility of three witnesses. There is no doubt that this was improper. *See e. g., United States v. Rodarte*, 596 F.2d 141, 146 (5th Cir. 1979); *United States v. Weinrich*, 586 F.2d 481, 496–97 (5th Cir. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); *United States v. Herrera*, 531 F.2d 788, 790 (5th Cir. 1976). We will not order a new trial, however, because the immediate curative instruction adequately protected the defendant from any potential prejudice. *See United States v. Morris*, 568 F.2d at 402.

### III. *Cross-Examination of the Defense's Witness*

During the presentation of its case-in-chief, the defense called Bob Yeager as a character witness. On direct, Yeager was asked whether he thought Wolford was truthful and honest, and whether he thought Wolford was frivolous with his money. On cross-examination, the prosecutor asked Yeager if he had ever gambled in Wolford's home. When Yeager answered affirmatively, the prosecutor followed up with several more questions about the details of the game. Defense counsel's two

objections to this line of questioning were overruled. The defendant contends that the testimony was outside the scope of the direct examination and, therefore, should not have been permitted.

Rule 611(b) of the Federal Rules of Evidence, which governs the proper scope of cross-examination, provides the following guidelines:

Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Fed.R.Evid. 611(b).

■ The second sentence of Rule 611(b) leaves the decision whether to allow inquiry into matters not covered during direct to the sound discretion of the trial judge. *See United States v. Beechum*, 582 F.2d 898, 907–08 n.8 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Although it may have been more appropriate to require the government to recall Yeager if it wished to question him about the dice game, we cannot say that the court's decision amounted to an abuse of discretion. Moreover, since it is not alleged that the testimony was inadmissible for any reason other than that it was adduced at the wrong time, we cannot say that a substantial right was affected. *See* Fed.R.Evid. 103(a).

### IV. *The Tapes*

During the course of their investigation, Evans and Labredo had dozens of conversations with Garrett. Forty-four of the conversations were taped. At trial, several of

---

**3.** The reasons for this rule were summarized by the Court in *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978):

These limitations on attorneys' arguments to juries exist for two reasons. First, an attorney's statement of his beliefs impinges on the jury's function of determining the guilt or liability of the defendant. Second, and more important, an attorney's statement of his beliefs injects into the case irrelevant or inadmissible matter or facts not legally pro-

duced into evidence. By giving his opinion, an attorney may increase the apparent probative force of his evidence by virtue of his personal influence, his presumably superior knowledge of the facts and background of the case, and the influence of his official position. If, for example, an attorney states in his summation that he believes a witness has lied, his statement suggests that he has private information supporting his beliefs. *Id.* at 401–02 (footnote omitted).

the tapes, along with written transcripts, were offered into evidence. The tapes contained evidence that Garrett had paid protection money to the agents on behalf of himself and others. Wolford's objections to the admission of the tapes and transcripts were overruled, but the jury was cautioned that the evidence was to be considered only as to Garrett.

■ The tapes and transcripts were not admitted as evidence that Wolford committed the crime charged. In fact, Wolford's brief points to only one short passage in which his name was even mentioned. Although the brief is sprinkled with references to hearsay and irrelevancy, the thrust of the argument is that Wolford was prejudiced because the jury was allowed to hear so much evidence concerning his codefendant. This is the identical contention made in urging that we overturn the trial court's refusal to grant severance. As we did in Part I of this opinion, we hold that the cautionary instructions given by the court sufficiently protected Wolford's rights. We do not find an abuse of discretion in allowing the tapes and transcripts to be admitted.

## V. Conclusion

In view of the difference in the quantum of evidence presented as to the two defendants, this trial presented some difficult problems for the judge. In this type of case, there is always the danger that one defendant may be found guilty merely by virtue of his being tried with the other. Here, however, the trial judge did precisely what was necessary, at each step of the way, to ensure that Wolford received a fair trial.

AFFIRMED.