**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ted SUDDERTH, a/k/a T-Bone, and
Kenneth LeCompte,
Defendants-Appellants.**

**No. 81–3630
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1982.
Rehearing Denied Sept. 1, 1982.

Simon & Dauterive, Ronald E. Dauterive, Lafayette, La., for Sudderth.

Frank G. DeSalvo, New Orleans, La., for Kenneth LeCompte.

Patrick Fanning, Michael Schatzow, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Marion Earnest, Ted Sudderth, and Kenneth LeCompte were jointly indicted for conspiracy to possess marihuana with intent

to distribute and to distribute marihuana, two counts of possession with intent to distribute, and two counts of use of a communication facility in violation of the Controlled Substances Act, contrary to 21 U.S.C. §§ 846, 841(a)(1), and 843(b), and 18 U.S.C. § 2. At the close of evidence, the court acquitted LeCompte on the two communications charges. The jury returned verdicts of guilty on all five counts against Earnest and Sudderth and on the three remaining charges against LeCompte. All defendants appealed. Because of delays occasioned by retention of new counsel and certain post-trial motions, the appeal of Earnest was considered first and his convictions were affirmed in an unpublished opinion. *United States v. Earnest,* 659 F.2d 1073, No. 81–3102 (5th Cir. 1981). We now consider the appeals of Sudderth and LeCompte. The convictions of Sudderth are affirmed. The convictions of LeCompte on Counts I and II are affirmed; the conviction on Count III is reversed.

## Facts

The prosecution was based largely on the testimony of Russell Janes, a coconspirator who was involved in the offenses charged but who cooperated with the government. According to the record, this case involves a significant marihuana operation, including the naval transportation of the contraband into New Orleans, its warehousing there, and its distribution by truck to various points around the country.

In June 1979, Janes, an experienced trucker, contacted Earnest, an acquaintance, seeking employment. They spoke by telephone and later met at their respective homes in Florida. Earnest told Janes that a shipload of marihuana was on its way to New Orleans and that Janes' driving skills and his expertise in falsifying documents, needed to "get the load through," could earn him several thousand dollars for a week's work. Shortly thereafter, Earnest, his wife, and Janes drove to Mobile and leased a truck, an International Harvester cab-over diesel semi-tractor, to pull an "eighteen wheeler" trailer. Janes and Earnest drove to New Orleans and went to the San Antonio Inn.

Upon arrival in New Orleans, Earnest made several telephone calls. As a result, Sudderth first went to the motel and explained a delay in the shipment of the marihuana, later returning with a typewriter and forms to be used by Earnest and Janes in preparing false bills of lading. Sudderth subsequently went to the motel to give Janes a telephone number to contact upon arrival at the destination assigned for the first truckload of marihuana they were to transport.

On or about June 20, 1979, LeCompte made an appearance at the motel. He had been dispatched to meet Earnest and Janes and to show them to the "Cave," the warehouse on Tchoupitoulas Street where the marihuana was first stored and later loaded in trailers. Plans called for Earnest and Janes to drive their tractor unit to the warehouse, pick up a trailer, and haul it to Washington Court House, Ohio. During an early conversation, Janes asked LeCompte what part he played in the operation. According to Janes, LeCompte "described his duties as everything from unloading ships to securing the load in the warehouse, loading trailers and delivering the dope."

LeCompte took Earnest to the "Cave" a few hours prior to Earnest's and Janes' departure on the Ohio run. Sometime late on June 20, Earnest and Janes drove to the warehouse and picked up a trailer containing over seven tons of marihuana, covered with ten tons of onions to mask the odor and to provide a legitimate appearance. They saw other trailers in the warehouse and a large quantity of marihuana stacked in the warehouse. The two drove to Ohio and delivered the trailer as directed. This shipment is the subject of Count II.

Upon returning to New Orleans, the two drivers picked up a second load, composed of ten tons of marihuana and ten tons of bell peppers, and drove it to Quakerstown, Pennsylvania. This shipment is the subject of Count III.

When they returned to New Orleans, on or about June 27, 1979, Earnest and Janes

drove to the warehouse and found LeCompte engaged in cleaning the premises. All of the marihuana was gone.

Insofar as the record reflects, after the Quakerstown run, neither Earnest nor Janes had further involvement in the scheme. A few days later, Janes contacted the authorities and thereafter cooperated with them in the investigation which resulted in the indictment and trial of Earnest, Sudderth and LeCompte.

## Sufficiency of Evidence

LeCompte challenges his conviction, contending, *inter alia*, that the evidence is not sufficient to support the conspiracy count or either of the two substantive counts. In order to establish the charge in Count I, the conspiracy allegation, the government was required to show that LeCompte agreed knowingly to distribute marihuana or to possess marihuana with intent to distribute. *See United States v. Metz*, 608 F.2d 147 (5th Cir. 1979); *United States v. Ryan*, 478 F.2d 1008 (5th Cir. 1973). As we observed in *Ryan*, "[o]ral statements of agreement are ... unnecessary. It is enough if a conspiracy to commit a crime can be inferred from the circumstances present in a given case." 478 F.2d at 1015. In order to prove the charges in Counts II (Ohio load) and III (Pennsylvania load), the government was required to show that LeCompte knowingly possessed the loads of marihuana with intent to distribute. *Cf. United States v. Young*, 655 F.2d 624 (5th Cir. 1981) (to sustain conviction for possession of cocaine with intent to distribute, government must prove knowing possession with intent to distribute). It was necessary that the government prove LeCompte knew the cargoes trucked by Janes and Earnest contained marihuana. *Cf. United States v. Rodriguez*, 588 F.2d 1003 (5th Cir. 1979) (conviction under drug-importation statutes requires showing that defendant knew he was importing controlled substance). .

## Conspiracy

Count I charges that during the month of June 1979, LeCompte conspired with Earnest, Sudderth, and others, to possess marihuana with intent to distribute and to distribute marihuana. In analyzing LeCompte's evidentiary challenge, we view the evidence and all reasonable inferences to be drawn therefrom, in the light supportive of the conviction, accepting all obvious credibility choices inherent in the jury verdict. *United States v. Hinds*, 662 F.2d 362 (5th Cir. 1981). If we conclude that the jury reasonably could have found that the evidence established LeCompte's guilt beyond a reasonable doubt, we must and will affirm the conviction. *See United States v. Bell*, 678 F.2d 547 (5th Cir. 1982) (en banc).

The evidence is sufficient to support the conspiracy conviction. The jury obviously found Janes credible. Janes testified about LeCompte's inculpatory statement sketching his duties in the illegal activity. LeCompte was sent to the motel to guide Earnest and Janes to the warehouse; he took Earnest there to show him the location and the trailer he was to deliver. The warehouse contained other trailers as well as a large stack of marihuana. LeCompte explained the use of the vegetables to hide and mask the contraband cargo, as well as other parts of the operation. Some several months before, the lease to the warehouse was in LeCompte's name. The jury was presented sufficient evidence upon which it reasonably could find that LeCompte knowingly involved himself in the marihuana distribution enterprise. The only way LeCompte can successfully challenge the conspiracy conviction is by totally discrediting Janes. That credibility determination is a jury prerogative, not an appellate panel's function. The conviction on Count I is affirmed.

## Possession With Intent—Count II

We similarly find sufficient evidence to support the conviction of LeCompte on Count II, the possession with intent charge involving the first load, that taken to Ohio. We need not again detail the evidence. Suffice to say that LeCompte met Earnest and Janes for the express purpose of show-

ing them the "Cave" and the trailer to be hauled. LeCompte spoke of his assigned duties, including everything from unloading the ship to loading and delivering truckloads. He spoke of the masking cargo and was very much in evidence prior to Earnest and Janes' departure on the first trip. The jury reasonably could find him guilty of Count II and that conviction is affirmed.

### Possession With Intent—Count III

We conclude otherwise, however, with respect to Count III which involves the load Earnest and Janes drove to Quakerstown, Pennsylvania. A painstaking review of the record reflects no evidence that LeCompte was aware of this second trip. He had no contact with either Earnest or Janes prior to the departure on the second trip. Indeed, after showing Earnest the "Cave" on the night of the first trip, LeCompte is not seen or referred to until the day that Earnest and Janes return from the second run. At that time, LeCompte is seen cleaning the warehouse. No inculpatory statements tending to prove Count III are in evidence.

Perhaps the government could have proven the charge with testimony from Janes, or another, that LeCompte was aware of the contraband cargo in the Pennsylvania trip, but the record is silent. One may well speculate as to the true facts, but convictions cannot rest on speculation. There is no proof that LeCompte committed, aided, abetted, counseled, commanded, induced, or procured Earnest or Janes with reference to the second trip. 18 U.S.C. § 2. There is abundant reasonable doubt that all elements of the offense were adequately proven. Thus, the conviction on Count III must be reversed.

### James Issue

■ In regard to the foregoing, some of the evidence constituted statements by LeCompte as recounted by a coconspirator. This evidence was properly admitted. Prior to allowance of the testimony, the trial judge conducted a *James* hearing and made the requisite findings that there was proof of a conspiracy and of LeCompte's involve-

ment therein dehors the hearsay testimony. *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

### Prosecutorial Misconduct

■ LeCompte assigns error to the district court's refusal to dismiss the indictment for prosecutorial misconduct. That argument is based on the fact, established at a pretrial hearing and at trial, that Janes was involved in a sexual relationship with Earnest's wife during the time he was cooperating with the Drug Enforcement Administration (DEA) in its effort to secure evidence against Earnest and the other participants in the marihuana ring. Earnest's wife testified before the grand jury that indicted Earnest, Sudderth, and LeCompte. LeCompte maintains that after Earnest's wife became aware of Janes' cooperation with the DEA, the government played on her fear that her relationship with Janes would be exposed, thereby improperly pressuring her to waive her marital privilege and testify against her husband.

In affirming Earnest's conviction, we pointed out that:

> There is available in appropriate cases a governmental misconduct defense grounded on dual principles of due process and supervisory powers of the Court. *United States v. Graves*, 556 F.2d 1319, 1324 (5th Cir. 1977), *cert. denied*, 435 U.S. 923 [98 S.Ct. 1485, 55 L.Ed.2d 516] (1978). And as this Court has previously expressed, prosecutorial conduct may be so fundamentally unfair as to deny a defendant's constitutional rights and warrant dismissal of the tainted indictment. *United States v. McInnis*, 601 F.2d 1319, 1328 (5th Cir. 1979), *cert. denied*, 445 U.S. 962 [100 S.Ct. 1649, 64 L.Ed.2d 237] (1980).

However, in that decision, we rejected Earnest's contention that Janes' relationship with his wife warranted the dismissal of the indictment. Because LeCompte's argument is a restatement of the essence of that argument, we must reject it again today. There is no evidence of involvement of any

government representative in the affair between Janes and Earnest's wife. Nor does the evidence show that she testified before the grand jury out of fear of a disclosure of this affair.

### Severance

LeCompte insists that the district court erred in denying his motion to sever. At the appellants' trial, the credibility of Janes *vel non* was one of the most hotly contested issues. LeCompte complains that the government was able to bolster Janes' general credibility by introducing evidence, such as motel and gas station receipts and tape recordings, that, because it related mainly to the alleged activities of Earnest or Sudderth and not to those of LeCompte, would not have been admissible in a trial against LeCompte alone. Therefore, LeCompte claims that he was prejudiced by the district court's refusal to sever.

 In considering a motion for severance, the trial court must balance the possibility of prejudice to the defendant against the government's interest in judicial economy. *United States v. Staller*, 616 F.2d 1284 (5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). The balancing is entrusted to the sound discretion of the district court; unless the court abuses that discretion, its decision not to sever will be sustained. In order to demonstrate an abuse of discretion, a defendant must show that the denial of a severance caused him to suffer "compelling prejudice." A showing of only some prejudice is insufficient.

 As a consequence, we reject LeCompte's argument. Assuming *arguendo* that the government could not have introduced the physical evidence used to bolster Janes' credibility at a trial against LeCompte alone, we do not believe that LeCompte suffered "compelling prejudice." The prejudice that LeCompte suffered is no different from that suffered by almost all defendants who are tried with others; evidence used to bolster the credibility of government witnesses frequently is not relevant to the charges against all the defendants. We cannot say that the prejudice that LeCompte suffered was "compelling" and, therefore, we cannot hold that the trial of the case against him should have been severed from the trial of the cases against the other defendants.

### Cross-Examination Methodology

 LeCompte also complains about the procedure that the district court adopted for objections made during the examination of witnesses. At the beginning of the trial, the district court ruled that those discussions would be held at the bench, out of the jury's earshot. LeCompte argues on appeal that this procedure caused lengthy interruptions in the cross-examination of Janes and another witness, interruptions which deprived him of his sixth amendment right to confront and examine effectively the witnesses against him. LeCompte complains not about the district court's refusal to allow him to ask any particular question on cross-examination, but only about the effect of the delays on the quality of that cross-examination.

A trial court has discretion to limit the scope and extent of cross-examination, and its rulings will not be disturbed on appeal absent a clear abuse of discretion. *United States v. Hawkins*, 661 F.2d 436 (5th Cir. 1981). The district court required the discussions on evidentiary objections to be held at the bench in order to shield the jury from any reference to inadmissible testimony. Our review of the record shows that the court was very successful in this effort. The district court's decision to tailor the manner of LeCompte's cross-examination to avoid a potentially prejudicial presentation was within its discretion.

### Motion for New Trial

 LeCompte complains of the denial of his motion for new trial, based on Rule 31 of the Federal Rules of Criminal Procedure, claiming that the verdict was not supported by the evidence. A motion for a new trial is addressed to the sound discretion of the trial judge, immune on appeal absent abuse of discretion. *United States*

*v. Antone,* 603 F.2d 566 (5th Cir. 1979). Our affirmance of the convictions of Le-Compte on Counts I and II obviously reflects that we find no abuse in denying a new trial on those counts for there is sufficient supportive evidence. Our reversal of the conviction on Count III moots that dimension of the appeal; no new trial is to be had, Count III is to be dismissed.

### Tape Recordings

Sudderth's assignment of error on appeal involves tape recordings introduced by the government during Janes' testimony. The recordings were made well after the commission of the crimes charged in the indictment and were of telephone conversations between Janes and Earnest. Sudderth is not mentioned in the recordings. Sudderth claims that the admission of the tapes into evidence, even though accompanied by an instruction from the judge that they were not to be considered as evidence against him, violated his sixth amendment right to confront the witnesses against him, as the Supreme Court has interpreted that right in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton,* the Court held erroneous the admission of the confession of one defendant implicating a codefendant, notwithstanding the trial judge's instruction that the confession was not to be considered in the determination of the guilt or innocence of the codefendant. However, *Bruton* does not control in the present case because the tapes involved herein in no way implicated or prejudiced Sudderth. As we held in *United States v. Wolford,* 614 F.2d 516 (5th Cir. 1980), a defendant is not prejudiced by the jury's hearing of tape recordings as evidence against a codefendant if the trial judge cautions the jury that the evidence may not be used against the defendant and if the tapes actually do not inculpate the defendant. We reject Sudderth's *Bruton* claim.

The convictions of Sudderth are AFFIRMED, the convictions of LeCompte on Counts I and II are AFFIRMED and the conviction of LeCompte on Count III is REVERSED.