UNITED STATES of America,
Plaintiff-Appellee,

v.

David James McCULLEY, Lloyd Alexis Santana, William Frank DeLucia, Defendants-Appellants.

No. 80–7888.

United States Court of Appeals,
Eleventh Circuit.

April 16, 1982.

Michael K. McIntyre, Federal Public Defender Program, Inc., Atlanta, Ga. (Court appointed), for DeLucia, McCulley and Santana.

William L. Harper, U. S. Atty., James E. Baker, Julie E. Carnes, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, HENDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This appeal arises out of the convictions of William DeLucia, David James McCulley, and Lloyd Alexis Santana for their activities regarding a plot to rob the United States mails. Specifically, DeLucia was convicted of stowing away on an aircraft in violation of 18 U.S.C. § 2199, of stealing mail in violation of 18 U.S.C. § 1708, and of stealing the contents of baggage in possession of a common carrier for transportation in interstate commerce in violation of 18 U.S.C. § 659. McCulley and Santana were convicted under 18 U.S.C. § 2 for aiding and abetting the above acts as well as aiding and abetting the breaking of seals and the loosening of straps on mail pouches with the intent to steal mail in violation of 18 U.S.C. § 1706. The appellants claim that the district court made several errors which require the reversal of their convictions. We find inadequate bases for these contentions and affirm the convictions.

Our story begins on a California morning when DeLucia, McCulley, and Santana boarded Eastern Airlines flight # 82, non-stop from Los Angeles to Atlanta. DeLucia boarded the flight in a somewhat unusual fashion, locked inside of a trunk marked "musical instruments." This trunk was no ordinary trunk; rather, it was a James Bond style device. It had a latch which enabled it to be opened from the inside and it was further equipped with a tank of oxygen, a flashlight, a screwdriver, a pair of pliers, and a roll of tape.

At some point en route to Atlanta, DeLucia emerged from the trunk. He opened several United States mail bags and looted them. He then deposited his booty into four pieces of baggage which were to be transferred to a Delta flight to Kansas City upon arrival in Atlanta.

Upon the completion of this task, DeLucia returned to his trunk. The plane then landed in Atlanta and the baggage was off-loaded. Fortunately, when the trunk was being unloaded, its door opened. An Eastern employee observed that a man was hiding inside. Eastern employees then began questioning DeLucia.

DeLucia stated that he had stowed away in order to win a bet with a friend. The Eastern employees began doubting the veracity of this story when they subsequently discovered that several bags of mail, which had been loaded in the bin where DeLucia was stowed away, were missing. They also noted that four pieces of baggage (bound for Kansas City and closely resembling the trunk) and a dolly which could be used for transporting a trunk were present in the storage bin.

The dolly was checked to be picked up in Atlanta, as was the trunk in which DeLucia was found, so an Eastern security investigator went to the baggage pickup area to see if anyone would attempt to claim it. When the investigator reached the claim area, the dolly had been removed from the rotating baggage claim apparatus and upon it was resting an Air France tote bag with a green piece of paper attached. When the investigator bent down to pick up the tote bag, McCulley came up and said, "Hey, what are you doing, those are my things!" Upon further questioning by the investigator, McCulley reiterated his ownership of the items. McCulley then stated that he was waiting for a large box marked "musical instruments" to arrive and showed the investigator his claim checks.

The investigator then took McCulley to an Atlanta police detective who detained him. Upon his return to the baggage claim area, the investigator noticed that the dolly and the tote bag were missing and he then proceeded to look for the items. In the rental car area, he found the appellant Santana carrying the Air France tote bag, which he identified by the green piece of paper attached to it. He stopped Santana and, after some questioning, Santana identified himself and showed the investigator his ticket. His ticket indicated that he had flown to Atlanta from Los Angeles on Eastern flight # 82 and that he was traveling on to Kansas City on a later Delta flight. The investigator then took Santana to join

McCulley to undergo questioning by the Atlanta police and the Federal Bureau of Investigation.

The investigator then continued his search for the missing dolly. In the Dollar Rent-A-Car pickup area, he observed the dolly next to a station wagon. He learned that a TWA employee named McCulley had rented the car earlier in the day. He obtained the key from the rental office and opened the door. Inside he found a photo album which indicated that it belonged to a David McCulley (McCulley had previously identified himself as "Jim Jones") and which contained photographs of McCulley.

The three appellants were thereafter placed under arrest. A search warrant was later obtained and the four pieces of baggage that were intended to go on to Kansas City were opened. They contained the missing mail.

Appellant DeLucia contends that the district court erred in denying his motion for severance. He claims that he suffered prejudice because of his joint trial with McCulley and Santana and that under Federal Rule of Criminal Procedure 14 he was entitled to a severance. Specifically, he alleges that because of the district court's determination that venue had not been established as to him under 18 U.S.C. § 1706, he was prejudiced by being tried with the other two appellants. Evidence was admitted as to violations of 18 U.S.C. § 1706 on the part of McCulley and Santana which, DeLucia alleges, damaged his defense of the charges under 18 U.S.C. § 659. Further, he claims prejudice because the jury was charged that it must find that he committed the acts constituting an infringement of 18 U.S.C. § 1706 if McCulley and Santana were to be convicted of aiding and abetting those acts.

■■■ We reject this contention. The decision to sever is committed to the trial court's discretion and is reversible only upon a showing of abuse of discretion. *United States v. Wolford*, 614 F.2d 516 (5th Cir. 1980). DeLucia, McCulley, and Santana committed criminal acts together and were jointly indicted. As a general rule, persons who are jointly indicted are tried jointly. *United States v. Morrow*, 537 F.2d 120 (5th Cir. 1976). Any evidence produced to convict McCulley and Santana on the counts relating to 18 U.S.C. § 1706 was also relevant and admissible to prove DeLucia's guilt on the counts relating to 18 U.S.C. § 1708 and 18 U.S.C. § 659. In light of this, we hold that the trial court did not abuse its discretion in denying DeLucia a severance and that he did not suffer prejudice requiring a severance under Rule 14, Federal Rules of Criminal Procedure.

McCulley and Santana claim that the trial court erred in failing to dismiss those counts relating to 18 U.S.C. § 1706 for lack of venue. They contend that venue can only be established against them if either (1) 18 U.S.C. § 1706 is a continuing offense under 18 U.S.C. § 3237, or (2) DeLucia, McCulley or Santana committed acts within the Northern District of Georgia to aid in the commission of a violation of 18 U.S.C. § 1706. The appellants contend that the government has not established either of these alternatives.

■■ We decline to accept the appellant's view of the issue. We hold on two bases that venue was proper under 18 U.S.C. § 1706. It is provided in 18 U.S.C. § 1706 that:

Whoever tears, cuts, or otherwise injures any mail bag, pouch, or other thing used or designed for use in the conveyance of the mail, or draws or breaks any staple or loosens any part of any lock, chain or strap attached thereto, with the intent to rob or steal any such mail, or to render the same insecure, shall be fined not more than $1000 or imprisoned not more than three years, or both.

We construe any violation of this statute which occurs on some form of transportation in interstate or foreign commerce to be a "continuing violation" under 18 U.S.C. § 3237:

(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may

be inquired of and prosecuted in any district in which such offense was begun, continued or completed.

> *Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.*

18 U.S.C. § 3237 (emphasis added). The crime in the instant case took place on a form of transportation in interstate commerce. There is no clause in 18 U.S.C. § 1706 which states the venue provisions of 18 U.S.C. § 3237 are inapplicable to offenses committed under it. It is precisely this sort of situation that 18 U.S.C. § 3237 was meant to deal with. It is a catchall provision designed to prevent a crime which has been committed in transit from escaping punishment for lack of venue.[1] *See analogously,* Fla.Stat.Ann. § 910.02; Ga. Code Ann. § 26–302(e). Its enactment was designed to eliminate the need to insert venue provisions in every statute where venue might be difficult to prove.[2] Therefore, since 18 U.S.C. § 3237 applies in the instant case, the government established venue as to the appellants as they aided and abetted a violation of 18 U.S.C. § 1706.

■ Additionally, venue was proper as to McCulley and Santana because they committed acts in the Northern District of Georgia designed to aid the commission of a violation of 18 U.S.C. § 1706. This is because they attempted to facilitate DeLucia's escape after he had violated the mailbag cutting statute. As we indicated in *United States v. York,* 578 F.2d 1036, 1040 (5th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978), "the clock does not stop for purposes of determining whether a participant is properly characterized as an aider and abettor or an accessory after the fact the moment a substantive crime is sufficient to support a conviction." In *United States v. Willis,* 559 F.2d 443 (5th Cir. 1977), we held that a bank robbery continued through its escape phase. We now hold that a violation of 18 U.S.C. § 1706 similarly continues through an attempted escape, and anyone who aids in the escape aids the completion of the crime itself. Therefore, venue was also proved since McCulley and Santana committed acts to aid the commission of the crime in the Northern District of Georgia.

Appellants McCulley and Santana contend that the district court erred in denying their motion for judgment of acquittal at the end of the government's case-in-chief. They claim that at most the actions taken by McCulley and Santana show a desire to associate with DeLucia. They claim that the government has not shown that accessorial acts were committed in the Northern District of Georgia.

We reject this claim. As noted above, we have found that the instant offense was a continuing one under 18 U.S.C. § 3237. Therefore, the appellants could be properly tried for aiding and abetting in the Northern District of Georgia without the government establishing that any accessorial acts were committed there.

However, proceeding on the second venue theory, *viz.,* that aiding and abetting acts were committed within the Northern District of Georgia, the appellants also lose. It is clear that the acts committed by McCulley and Santana were designed to effect DeLucia's escape. If McCulley and Santana were aiding DeLucia's escape after his commission of a violation of 18 U.S.C.

---

1. It should be noted that we find the district court's ruling that venue had not been established as to DeLucia as inexplicable.

2. We believe that the policy behind Rule 18 of the Federal Rules of Criminal Procedure and the sixth amendment is in no way undermined by our decision here. That policy, the right to be tried by a jury of one's peers, was designed to prevent abuses such as, *e.g.,* having an individual who committed a robbery in Delaware from being tried in North Dakota. In the instant case, the criminal conspirators voluntarily entered the Northern District of Georgia with the intent to further the ends of the conspiracy. Thus, neither the sixth amendment nor Federal Rule of Criminal Procedure 18 protects the appellants.

§ 1706, they were aiders and abettors to the crime itself. The standard for reviewing sufficiency of the evidence claims in this circuit has been most clearly stated in *United States v. Spradlen*, 662 F.2d 724 (11th Cir. 1981):

> When reviewing sufficiency of the evidence supporting a criminal conviction, the standard of review is whether, viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the government, the jury could conclude that the evidence is inconsistent with every reasonable hypothesis of innocence.

662 F.2d at 727. *See also United States v. Rivamonte*, 666 F.2d 515 (11th Cir. 1982); *United States v. Nickerson*, 669 F.2d 1016 (5th Cir. 1982). Viewed in this light, the evidence was sufficient to establish venue as to McCulley and Santana, as it is apparent that their actions in Atlanta were part of the escape phase of the violation of 18 U.S.C. § 1706.

The appellants claim that the trial court erred in admitting certain pre-trial custodial statements made by DeLucia and Santana. DeLucia's statements were made during the interrogation by Agent Darko of the Federal Bureau of Investigation after DeLucia's arrest. DeLucia refused to sign the waiver of rights form and indicated that he wanted to speak with an attorney. Darko then asked DeLucia to provide him with some background information such as his name, address, and employment in order that the booking process might be completed.

The statement which DeLucia seeks to suppress relates to his employment at Trans World Airlines as a ramp serviceman. DeLucia claims that this statement is prejudicial to him because much of the evidence at trial involved the loading, transporting, and unloading of materials from airplanes. DeLucia asserts that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny require all interrogation to cease once the accused requests an attorney.

■ We reject this contention. DeLucia's statement that he was employed by TWA as a ramp serviceman was not prejudicial in light of the overwhelming evidence of his guilt. DeLucia's argument that the district court committed harmful error is frivolous.

Santana makes a different claim. He claims that certain false exculpatory statements made by him should have been suppressed. This is because even though he signed a waiver of his *Miranda* rights, he alleges that he requested to see an attorney.

■ We also reject this claim. Agent Darko testified that Santana never made a request to telephone an attorney. This version of the facts was accepted by the court below and we will not disturb this credibility choice. Therefore, since Santana voluntarily and in writing waived his *Miranda* rights, we hold that his false exculpatory statements were properly admitted against him.

McCulley and Santana assert that their arrests were unlawful because they were not based upon probable cause. The appellants maintain that all evidence seized during the arrest should be suppressed.

■ We do not accept this view of the evidence that was available to the officers at the time of arrest. We find that probable cause to arrest McCulley and Santana did exist. The test for determining whether probable cause exists is whether a prudent man would believe that (1) a criminal offense had been or was being committed and (2) the suspect committed it. *See United States v. Agostino*, 608 F.2d 1035 (5th Cir. 1979). We hold that this test was met in the instant case. The officers knew that DeLucia had hidden himself in a trunk marked "musical instruments" on flight 82, which constituted a violation of 18 U.S.C. § 2199. They knew that a dolly which could be used to move the heavy trunk had been picked up by McCulley and that McCulley had a claim check for the trunk marked "musical instruments." Thus, probable cause existed for the arrest of McCulley. As for Santana, the officers knew that

the dolly and the bag that McCulley had picked up were missing. They discovered the bag in Santana's possession, which indicated that he was either associated with McCulley or had stolen the bag. Further, before taking him into custody, they knew he was on the same flight as McCulley and DeLucia. Therefore, probable cause existed to arrest Santana. Since probable cause existed, any evidence found during a search incident to arrest was admissible against the appellants. Therefore, we find this contention groundless.

Lastly, the appellants contend that the trial court erred when it refused to suppress any evidence seized as a result of the warrantless search of the automobile rented by McCulley. They claim that McCulley had a legitimate expectation of privacy in the automobile (as did Santana and DeLucia, since they had agreed to share the cost with McCulley). Further, they allege that the Eastern employee's search of the automobile triggered the fourth amendment's protections since he was acting at the direction of the Federal Bureau of Investigation and the Atlanta police.

 We note at the outset of this discussion that we will assume, but do not decide, that the investigator for Eastern was acting as an arm of the Federal Bureau of Investigation and the Atlanta police when he made the search of the rental car. We also note that DeLucia and Santana lack standing to object to the search. The test for making this determination is whether an individual has a legitimate expectation of privacy in the place searched. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). DeLucia and Santana fail to meet this test. They did not have a property or possessory interest in the automobile any greater than an alleged agreement to share expenses. We find this case similar to *United States v. McConnell*, 500 F.2d 347 (5th Cir.), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975), where we rejected a claim of standing. Therefore, we hold that DeLucia and Santana lack standing to challenge the search.

We will assume that McCulley does have standing to raise this contention. We nevertheless conclude that the district court's denial of the motion to suppress does not mandate reversal.

McCulley suffered no prejudice from the warrantless search. Only a photo album belonging to McCulley and certain identification was found in the search. Though the district court perhaps should not have allowed them into evidence, we hold that if error was committed it was harmless beyond a reasonable doubt.

Therefore, we have examined and reject the appellants' contentions. Since none of their arguments have any merit, affirmation of their convictions is required.

AFFIRMED.