# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 8, 2004        Decided December 21, 2004

No. 03-3061

UNITED STATES OF AMERICA,
APPELLEE

v.

JEFFREY L. MORGAN,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00180-10)

---

*Michele J. Woods*, appointed by the court, argued the cause for appellant. With her on the briefs was *Joseph M. Catoe*.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, *Roy W. McLeese, III*, and *Laura A. Ingersoll*, Assistant U.S. Attorneys.

Before: EDWARDS, HENDERSON, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Appellant Jeffrey Morgan appeals from his conviction in the District Court for receiving stolen federal property in violation of 18 U.S.C. § 641 (2000). His sole contention on appeal is that venue was improper in the District of Columbia ("District" or "D.C.").

Appellant's prosecution arose out of an indictment charging him, along with 10 co-conspirators, with participating in an elaborate conspiracy to defraud the United States. Appellant was also charged with receiving stolen government property, the only charge of which he was convicted. The evidence introduced at trial regarding appellant's role in the conspiracy related solely to one stolen computer that was ultimately found in his possession. It is undisputed that appellant physically received this computer (which was stolen in the District) in Maryland, and that the computer thereafter remained in Maryland until it was recovered by the authorities.

The Government claims that venue was proper in the District of Columbia on two alternative grounds. First, the Government asserts that appellant "constructively received" the computer at the moment it was stolen. Second, the Government argues that the offense for which appellant was convicted is one "involving . . . transportation in interstate . . . commerce," and, under 18 U.S.C. § 3237(a) (2000), may therefore be prosecuted in any district through which the computer moved. We reject both of these contentions.

All of appellant's conduct constituting his alleged commission of the offense occurred in Maryland. The evidence in this case does not permit the conclusion that appellant constructively possessed the computer at any time while it was in the District, and we therefore need not reach the question whether a conviction for receiving stolen government property under 18 U.S.C. § 641 can be premised on a theory of constructive receipt. Furthermore, appellant's conviction was not for an "offense involving" transportation in interstate

commerce as required by 18 U.S.C. § 3237(a) ¶ 2. Accordingly, we hold that venue in the District of Columbia is improper and reverse appellant's conviction.

## I. BACKGROUND

The charges in this case arose from an elaborate conspiracy centered around Elizabeth Mellen and her scheme to defraud her employer, the U.S. Department of Education ("Department"). Mellen, appellant's aunt, worked as a senior telecommunications manager for the Department at an office building located in the District. She was responsible for the Department's telecommunication expenditures and for ordering its related goods and services. Mellen's responsibilities also included supervising the Department's telephone installations and maintenance and the technicians who performed that work.

Robert Sweeney was one of those technicians. Sweeney was employed by Bell Atlantic Federal Systems and was assigned to work on the telecommunication systems at the Department. Sweeney was required to account for his time and the materials he ordered to perform his work. At the end of each month, Sweeney would present his expenses to Mellen for her approval. After Mellen signed off, Sweeney would submit them to Bell Atlantic, which, in turn, billed the Department.

At some point, Mellen began to ask Sweeney to run personal errands for her. In return, Mellen permitted Sweeney to submit false claims for overtime pay. Eventually, Mellen had Sweeney order and obtain various telephones, computers, printers, cameras, and copiers for her personal use. Sweeney knew that these items, the expenses for which were ultimately billed to the Department, were not legitimate items for him to order.

Items that Sweeney ordered would arrive at a large Bell Atlantic warehouse located at 58-62 L Street in Northeast Washington, D.C. When the items arrived, Sweeney would call

Mellen for further instructions, retrieve the items from the warehouse, and deliver them in accordance with Mellen's instructions. Sometimes he would simply deliver the items to Mellen's office or to an unlocked car which would be parked outside of the building in which Mellen worked. Other times, Sweeney would deliver the items to various locations that Mellen would specify.

On one occasion, Mellen had Sweeney order five computers, one of which is the subject of appellant's conviction. After picking up the computers at the warehouse, Sweeney and Lewis Morgan (a Department employee, unrelated to appellant, who also made deliveries for Mellen not in connection with his official duties) used a Bell Atlantic van to deliver them to locations specified by Mellen.

One of those computers was to be delivered to Susanne Morgan's house in Maryland. Susanne Morgan, who also worked at the Department, was appellant's mother and Mellen's twin sister. Sweeney contacted appellant – who was living at his mother's house at the time – advising him that the computer was going to be delivered and requesting that appellant be present to accept it. As a result, appellant was present when Sweeney and Lewis Morgan arrived at Susanne Morgan's house and delivered the computer.

The computer was initially set up in the basement of Susanne Morgan's house. In the spring or summer of 1999, appellant moved out of his mother's home and into the home of his brother, which was also located in Maryland. Appellant brought the computer with him to his brother's home and kept it next to his bed, where, months later, it was ultimately found and seized by federal agents.

## II. ANALYSIS

### A. *Standard of Review and General Principles Governing Venue*

The Government bears the burden of establishing by a preponderance of the evidence that venue is proper with respect to each count charged against the defendant. *United States v. Haire*, 371 F.3d 833, 837 (D.C. Cir. 2004) (citing *United States v. Lam*, 924 F.2d 298, 301 (D.C. Cir. 1991)). In reviewing whether the Government has properly established venue, we view the evidence in the light most favorable to the Government. *Id.*

Proper venue in criminal proceedings was "a matter of concern to the Nation's founders." *United States v. Cabrales*, 524 U.S. 1, 6 (1998). Indeed, the Constitution "twice safeguards the defendant's venue right: Article III, § 2, cl. 3, instructs that 'Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed'; the Sixth Amendment calls for trial 'by an impartial jury of the State and district wherein the crime shall have been committed.'" *Id.*; *see also United States v. Passodelis*, 615 F.2d 975, 977 n.3 (3d Cir. 1980) (noting that although, read literally, the provision in the Sixth Amendment is a vicinage rather than venue provision, because it specifies the place from which the jurors are to be selected rather than the place of trial, the distinction has never been given any weight, "perhaps . . . because the requirement that the jury be chosen from the state and district where the crime was committed presupposes that the jury will sit where it is chosen").

Mindful that "[q]uestions of venue in criminal cases . . . raise deep issues of public policy," the Supreme Court has articulated a rule endorsing a restrictive construction of venue provisions:

> If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage

> to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.

*United States v. Johnson*, 323 U.S. 273, 276 (1944). Although the specific holding in *Johnson* was mooted by statute in 1948, the rule of construction announced in that case survives. *See, e.g*, *United States v. Cores*, 356 U.S. 405, 407 (1958) ("The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place. Provided its language permits, the Act in question should be given that construction which will respect such considerations."); *see also United States v. Brennan*, 183 F.3d 139, 147 (2d Cir. 1999) (noting that *Johnson* rule of construction retains vitality).

**B.   *The* Locus Delicti**

Rule 18 of the Federal Rules of Criminal Procedure provides that, unless otherwise permitted by statute or the Rules, "the government must prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18. When the statute proscribing the offense does not contain an express venue provision, "'[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Cabrales*, 524 U.S. at 6-7 (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

Here, Morgan was convicted of violating 18 U.S.C. § 641. That statute provides that any person who "receives, conceals, or retains [any record, voucher, money, or thing of value of the United States or of any department or agency thereof] with intent to convert it to his use or gain, knowing it to have been

embezzled, stolen, purloined or converted" commits a criminal offense. It is undisputed that Morgan did not receive the computer until it arrived in Maryland. It is also undisputed that the computer thereafter remained in Maryland until it was recovered by the authorities. The Government contends, however, that Morgan "constructively received" the computer at the moment Sweeney removed the computer from the warehouse, and therefore Morgan committed acts constituting the offense within the District of Columbia. The Government's position is meritless.

Because a person may be said to "receive" a thing when he "take[s] possession" of it, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1894 (1993), and because it is well settled that criminal possession may be either actual or constructive, *see, e.g.*, *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003), it is plausible that one may receive stolen property within the meaning of 18 U.S.C. § 641 by obtaining constructive possession of it. *See also* 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.2(b), at 157 (2d ed. 2003); 3 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 444, at 612-15 (15th ed. 1995). However, we have never explicitly held that a conviction for receiving stolen property may be premised upon such a theory of constructive receipt, and we have no need to do so today. For even assuming that a conviction under § 641 can be had on such evidence, we conclude that the evidence in this case does not support a finding that Morgan constructively possessed the computer within the District.

A finding of constructive possession requires evidence establishing that the defendant had the ability to exercise "knowing dominion and control" over the items in question. *Alexander*, 331 F.3d at 127 (internal quotation marks omitted). The evidence proffered by the Government in this case, even when viewed in the light most favorable to it, does not permit the conclusion that Morgan had the ability to exercise knowing

dominion and control over the computer within the District of Columbia.

The Government relies on two pieces of evidence in support of its argument: (1) evidence indicating that, at some time prior to the delivery of the computer, Jeffrey Morgan approached Sweeney and Lewis Morgan at the Department of Education and asked them when he would be receiving his computer; and (2) evidence that Sweeney called Jeffrey Morgan to arrange for the delivery of the computer to Susanne Morgan's address. From these pieces of evidence, the Government argues that it is reasonable to infer that both Sweeney and Jeffrey Morgan considered Jeffrey Morgan to be the intended recipient of the computer, even though it was being delivered to Susanne Morgan's address. However, even assuming that the Government is correct that this evidence supports the inference that both parties considered appellant to be the intended recipient of the computer, this, without more, is simply insufficient to support a finding that appellant had the ability to exercise "knowing dominion and control" over the computer when it was in the District of Columbia.

On the contrary, the evidence in this case indicates that if anyone exercised dominion and control over the computers Sweeney was transporting, it was Mellen. It is undisputed that Sweeney ordered the computers at Mellen's direction and delivered them according to Mellen's instructions and to the locations she specified. Moreover, although Sweeney contacted appellant to arrange for delivery of one of the computers to Susanne Morgan's address (at Mellen's direction), there is no indication that Mellen relinquished her control over the computer. Indeed, on one occasion, Mellen directed Sweeney to pick up a television from the Bell Atlantic warehouse and bring it to a location in D.C. While Sweeney was in transit, however, Mellen redirected the delivery to a new location in Maryland. *See* Trial Tr. of 10/29/02 a.m. session at 52-53,

*reprinted in* Appendix at 159-60. The Government identifies nothing to suggest that Mellen could not similarly have redirected the computer in question before it arrived at Susanne Morgan's house.

In short, the evidence identified by the Government does not permit the conclusion that appellant constructively possessed the computer once Sweeney removed it from the warehouse. Therefore, we reject the Government's argument that venue lies because appellant constructively received the computer in the District of Columbia.

## C. *Continuing Offense Under 18 U.S.C. § 3237(a)*

The Government additionally relies on 18 U.S.C. § 3237(a) as a basis for venue in the District. This general venue provision deals with so-called continuing offenses, and provides that:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a).

The Government does not invoke the first paragraph of § 3237(a). Instead, the Government relies only on the second paragraph, contending that, because the computer was

transported across state lines, Morgan was convicted of an offense involving transportation in interstate commerce. Thus, according to the Government, venue is proper in D.C. or Maryland.

There is no doubt that Sweeney transported the computer in interstate commerce when he drove it from D.C. to Maryland. But this information, without more, is no more telling than is information about the state in which the computer was manufactured before it was shipped to D.C. The important question here is whether Morgan's *receipt of the computer in Maryland* – the offense for which he was convicted – was an "offense involving" interstate transportation under § 3237(a) ¶ 2. We conclude that it was not.

The most natural reading of § 3237(a) ¶ 2 is to construe "any offense involving" by reference to the *elements* of the offense at issue. "Offense" obviously refers to a particular crime, so the language of the statute invites consideration of only the elements of that crime in determining whether the offense involved "the use of the mails," "transportation in interstate or foreign commerce," or "the importation of an object or person into the United States." For example, in a case in which a man drives from his home in D.C. to New York, strangles a federal officer to death in New York in violation of 18 U.S.C. § 1114 (2000), then returns to his home in D.C., the circumstances surrounding the crime include the killer's travel in interstate commerce, but his crime is not an "offense involving" transportation in interstate commerce. In other words, a faithful reading of the precise words of the statute in the order in which they are written suggests that an "offense involv[es]" transportation in interstate commerce only when such transportation is an element of the offense.

In *United States v. Brennan*, 183 F.3d 139 (2d. Cir. 1999), the Second Circuit held that the mail fraud statute, 18 U.S.C. § 1341 (1994) – which makes it unlawful to "place[]," "deposit[],"

or "take[] or receive[]" any mail matter as part of a scheme to defraud – does not proscribe conduct involving "the use of the mails" within the meaning of § 3237(a) ¶ 2. *Brennan*, 183 F.3d at 146-47. The court concluded that "§ 3237(a) is best read as not applying to statutes, like the mail fraud statute, that specify that a crime is committed by the particular acts of depositing or receiving mail, or causing it to be delivered, rather than by the more general and ongoing act of 'us[ing] the mails.'" *Id*. at 147 (alteration in original); *accord United States v. Ross*, 205 F.2d 619, 621 (10th Cir. 1953) ("[T]he unlawful act defined in [18 U.S.C.] § 1461 [(1952)] is the deposit for mailing and not a use of the mails which may follow such deposit. That act is complete when the deposit is made and is not a continuing act. It does not involve a use of the mails.").

In reaching this conclusion, the Second Circuit noted that

the relevant portion of § 3237(a) was passed by Congress in response to the Supreme Court decision in *United States v. Johnson*, 323 U.S. 273 (1944). *Johnson* involved a prosecution under the National Denture Act of 1942, 56 Stat. 1087, the current version of which is codified at 18 U.S.C. § 1821. The statute generally made it unlawful "to use the mails or any instrumentality of interstate commerce for the purpose of sending or bringing into" any state or territory a denture constructed from a cast not taken by a dentist licensed to practice in the state into which the denture was sent. The defendants were charged with having violated the statute by depositing illicit dentures into the mails at Chicago for delivery in Delaware. *See* 323 U.S. at 274. The government filed an information against defendants in Delaware. *See id*. The information was quashed on the ground that venue was proper only in the Northern District of Illinois. *See id*.

The Supreme Court affirmed, construing the statute to permit "trial of the sender of outlawed dentures to be confined to the district of sending, and that of the importer to the district into which they are brought." *Id.* at 275. The Court acknowledged that Congress was empowered expressly to create a "continuing offense" by, in effect, defining "the locality of a crime [to] extend over the whole area through which force propelled by an offender operates"; if Congress had utilized this power in the denture context, the Court stated, the sender would have been subject to prosecution in the district of sending, in the district of arrival, and in any intervening district. *See id.* However, "such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution." *Id.*

Emphasizing that "[t]hese are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests," *Johnson* articulated a rule favoring restrictive construction of venue provisions: "[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." *Id.* at 276. . . .

As noted, Congress passed § 3237(a) in response to *Johnson*. *See* Reviser's Note, 18 U.S.C.A. § 3237(a); *Pratt v. First California Co., Inc.*, 517 F.2d 11, 13 (10th Cir. 1975). In doing so, Congress did what *Johnson* indicated it could: it expressly determined that offenses involving "the use of the mails" were "continuing offenses." . . .

Passage of § 3237(a), however, could not and did not alter the constitutional and policy concerns underlying the Court's restrained view of venue; and it did not affect the general validity of the *Johnson* rule of construction.

*Brennan*, 183 F.3d at 146-47 (citations omitted) (alterations in original).

Thus, under the *Brennan* and *Ross* constructions of § 3237(a) ¶ 2, what was relevant was whether the statute specifying the offense included "the use of the mails" as an element. Under this approach, receipt of stolen property under 18 U.S.C. § 641 is not an "offense involving" transportation in interstate commerce, for it does not require any such transportation for the commission of the offense.

The Government insists that whether an offense involves interstate transportation under § 3237(a) ¶ 2 "is not a question to be answered by looking to the elements of the offense, but instead to be answered by looking to the facts in each particular case." Br. for Appellee at 34. This is gobbledygook. In an effort to confine this otherwise unintelligible argument, the Government urges that Morgan's offense "involv[ed]" transportation in interstate commerce because "the transportation in interstate commerce was integral to [Morgan's] actual, physical receipt of the stolen government property." *Id.* at 40. More gobbledygook.

The Government's position appears to be almost limitless in its expansion of the availability of venue under § 3237(a) ¶ 2. Under its approach, venue in a prosecution for receiving stolen property would lie in any district through which the goods had passed. Thus, if the computer in this case had been driven from California, rather than from D.C., venue would apparently lie in each and every district through which the delivery truck drove. Indeed, we cannot discern any reasonable principle that would confine the Government's logic to the offense of receiving stolen

property. The implication of the Government's approach is that *any* offense involves transportation in interstate commerce so long as the interstate transportation is among the circumstances related to the commission of the offense. It is rare that a crime does not involve circumstances in which a person or instrumentality related to the crime has not passed through interstate commerce. Thus, under the Government's theory, § 3237(a) ¶ 2 would apply to almost every offense. This view is obviously untenable.

Although § 3237(a) ¶ 2 has been applied by other courts in a variety of contexts, *see* 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 303, at 319 n.19 (3d ed. 2000) (collecting and describing cases), the Government can identify no case in which a court has construed § 3237(a) ¶ 2 so expansively. *See* Recording of Oral Argument at 13:20-:37. And we have found none. Even in the few cases in which courts have applied § 3237(a) ¶ 2 to offenses that do not include transportation in interstate commerce as an element, they have always required a tight connection between the offense and the interstate transportation.

For example, the Eleventh Circuit has employed § 3237(a) ¶ 2 in two cases where the offense occurred *on* a form of interstate transportation. *See United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004) (offenses committed while on an airplane); *United States v. McCulley*, 673 F.2d 346 (11th Cir. 1982) (same). The court reasoned that § 3237 was "designed to prevent a crime which has been committed in transit from escaping punishment for lack of venue." *Breitweiser*, 357 F.3d at 1253-54 (internal quotation marks omitted).

The Government cites *United States v. DeKunchak*, 467 F.2d 432 (2d Cir. 1972), but the decision in that case plainly does not support the expansive reading of § 3237(a) ¶ 2 that the Government advances here. In *DeKunchak*, the defendant was convicted for receiving, selling, and disposing of stolen goods

in violation of 18 U.S.C. § 2315 (1970).  That offense, however, by its terms applies only to goods "which are a part of, or which constitute interstate or foreign commerce."  Indeed, the Second Circuit noted that the legislative history explicitly states that Congress intended § 2315 and the related 18 U.S.C. § 2314 (which criminalizes the transportation of stolen goods in interstate commerce) to be covered by § 3237.

In sum, we refuse to countenance the Government's theory that Morgan's receipt of the computer was an "offense involving" transportation in interstate commerce simply because the computer traveled across state lines before reaching Morgan. It is not surprising that no court has ever approved the theory submitted by the Government here, for such an interpretation would result in a stunning expansion of permissible venue sites under § 3237(a) ¶ 2.  As the Supreme Court instructed in *Johnson*: "[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." 323 U.S. at 276.  We adopt a restrictive construction of the venue provision in § 3237(a) ¶ 2, both because the statute commands it and because, even if the statute admits of two equally plausible constructions, "the constitutional concern for trial in the vicinage" controls.  The Government's position urging otherwise is entirely untenable, and we reject it.

### III. CONCLUSION

We hold that the District of Columbia was an improper venue for appellant's prosecution under 18 U.S.C. § 641. Accordingly, the judgment of the District Court is reversed.