**UNITED STATES of America**

v.

**Warren AYO, Jr., Defendant.**

**Criminal No. 11–0132–WS.**

United States District Court,
S.D. Alabama,
Southern Division.

Aug. 10, 2011.

Daryl A. Atchison, U.S. Attorneys Office, Mobile, AL, for Plaintiff.

## ORDER

WILLIAM H. STEELE, Chief Judge.

This matter is before the Court on the defendant's motion to dismiss for lack of venue or, in the alternative, motion to transfer. (Doc. 11). The parties have filed briefs in support of their respective positions, (Docs. 11, 19, 23), and the motion

is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion to dismiss is due to be denied and the motion to transfer is due to be granted.

## BACKGROUND

Counts One and Two charge the defendant with using a facility in interstate commerce with the intent to promote, manage, establish and carry on a business enterprise involving unlawful gambling, in violation of 18 U.S.C. § 1952(a)(3)(A).

Counts Three and Six charge the defendant with using a wire communication facility for the transmission of information assisting in the placing of bets or wagers or for transmission of a wire communication entitling the recipient to receive money or credit as a result of bets or wagers, in violation of 18 U.S.C. § 1084(a).

Counts Four and Five charge the defendant with accepting, in connection with the participation of another person in unlawful internet gambling, the proceeds of credit extended to or on behalf of such other person, in violation of 31 U.S.C. § 5363 and 18 U.S.C. § 2.

The alleged dates of the offenses range from April 13 to May 3, 2011. Each offense is alleged to have occurred "in the Southern District of Alabama, Southern Division and elsewhere." (Doc. 4).

The defendant has synopsized the government's discovery, (Doc. 11 at 3–6), the government has offered its own synopsis, (Doc. 19 at 1–3), and neither party quarrels with the other's presentation. The parties thus agree for present purposes with the following description of the underlying facts relevant to the propriety of venue.

The defendant has not traveled to this District in connection with the crimes with which he is charged but has been located principally if not exclusively in Louisiana. The defendant began a bookmaking operation through an internet gambling website. After investigation, Homeland Security Investigations ("HSI") developed a confidential informant, who resided in Pennsylvania and bet with the defendant through the website.

The informant owed the defendant a significant sum in gambling debts. The informant called the defendant, told the defendant he was in Gulf Shores, Alabama, and offered to send a $2,000 payment. The defendant provided a Chalmette, Louisiana address to send the payment. The informant actually was in Pennsylvania, but the money was sent via FedEx by HSI agents from Gulf Shores. This conduct underlies Count Four.

The informant then told the defendant of a person working in Gulf Shores who was interested in betting through the defendant's website on an upcoming playoff series. The informant gave the defendant a telephone number for "Rob," who was actually an undercover agent. The area code was 251, which covers southwest Alabama. The defendant twice called Rob, who was physically in Mobile, to set up Rob's account and explain that payments to cover any losses were to be shipped by FedEx. After Rob rang up $500 in losses, he called the defendant from Mobile and asked how to settle up. The defendant returned Rob's call and instructed him to send cash by FedEx to the Chalmette address.[1] Rob did so, sending the package from Gulf Shores. This conduct underlies Count Five.

---

1. The defendant initially complained that the government's investigative notes do not conclusively establish Rob's location during these telephone calls. (Doc. 11 at 5–6). The gov-

ernment represents in its brief that he was in Mobile, (Doc. 19 at 2–3), and the defendant does not challenge that representation in his reply. Accordingly, for present purposes the

## DISCUSSION

### I. Motion to Dismiss.

 The defendant argues that venue is improper as to Counts Four and Five (the Section 5363 counts). The burden is on the prosecution to prove venue. *United States v. Schlei*, 122 F.3d 944, 974 (11th Cir.1997).

### A. Pretrial Consideration of Venue.

 The government interposes a threshold objection. Relying on *United States v. Snipes*, 611 F.3d 855 (11th Cir. 2010), it argues that the propriety of venue cannot be resolved except by a jury at trial. (Doc. 19 at 3–4). According to the government, as long as an indictment charges that the offense occurred in the district of prosecution, the defendant must face trial in that district, short of a successful motion to transfer under Rule 21(b). The Court does not read *Snipes* so broadly.

In *Snipes*, the defendant was charged in the relevant counts with willful failure to file an income tax return. 611 F.3d at 861, 866. Venue for such a crime is either the district where the defendant resided at the time of the offense or the location of the designated service center. *Id.* at 864. The indictment alleged that the defendant resided in the Middle District of Florida, but the defendant denied this and demanded a pre-trial evidentiary hearing to resolve, without a jury, the factual issue of where he resided. *Id.* at 865–66. The question before the *Snipes* Court was whether "the district court abused its discretion by not conducting a pretrial evidentiary hearing—essentially, a bench trial—on venue." *Id.* at 865. In this context, the Court wrote the following:

Court assumes that Rob was in the District

As with resolving other important elements contained in a charge, a jury must decide whether the venue was proper. *See Green v. United States*, 309 F.2d 852, 857 (5th Cir.1962) ("We hold that the trial court erred in failing to submit the question of venue to the jury."). *See also United States v. Stickle*, 454 F.3d 1265, 1273 (11th Cir.2006); *United States v. Muhammad*, 502 F.3d 646, 656 (7th Cir.2007). In this case, the grand jury returned a facially sufficient indictment, with a clear statement of venue. Counts Three through Eight identified both Snipes's residence (Windemere, Florida) and the location of the crime (the Middle District of Florida). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (footnote omitted).

Indeed, it would not have been proper for the district court to find the appropriate venue in a pretrial evidentiary hearing. "Under Fed.R.Crim.P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir.1987). To permit preliminary trials on essential facts, post-indictment, would "run counter to the whole history of the grand jury institution, ... [and] would result in interminable delay but add nothing to the assurance of a fair trial." *Costello*, 350 U.S. at 363–64, 76 S.Ct. 406.

611 F.3d at 866. The Court concluded that "[t]here was no abuse of discretion in

when the calls were made.

refusing to grant a novel pretrial, post-grand jury hearing to challenge the claimed venue found in a facially sufficient indictment." *Id.* at 867.

It is clear from the Court's introductory and concluding statements that the limited issue before it was whether the trial court should have conducted a fact-finding hearing prior to trial. 611 F.3d at 865, 867. The Court's discussion likewise focused on the fact-finding aspect of the relief requested by the defendant. *Id.* at 866 ("pretrial evidentiary hearing," "determination of facts that should have been developed at trial," "preliminary trials on essential facts") (internal quotes omitted). The *Snipes* Court did not purport to rule that a trial court cannot make a legal evaluation of venue before trial based on an agreed or undisputed statement of facts.

Even the broadest statements in *Snipes* do not suggest such a ruling. "[A] jury must decide whether the venue was proper," 611 F.3d at 866, but the very case from which *Snipes* drew this quotation held merely that the prosecution must actually prove venue when the defendant challenges it at trial. *Green,* 309 F.2d at 853, 856; *see also United States v. White,* 611 F.2d 531, 536–37 (5th Cir.1980) (construing *Green* ) (the "failure to instruct on venue is reversible error when trial testimony puts venue in issue and the defendant requests the instruction"). This part of *Snipes* says only that a jury must decide whether venue is proper when there is a disputed factual aspect to the issue.

In the same citation string, the *Snipes* Court cited *Stickle* and *Muhammad.* It cited *Stickle* for the proposition that "[t]he jury was justified in finding that the government established venue in the Southern District of Florida for count II." 454 F.3d

at 1273. This is hardly a pronouncement that the jury must always resolve venue, which in *Stickle* turned on the factual question of where an offender resided. *Id.* at 1272. *Snipes* cited *Muhammad* for the proposition that " '[v]enue is *ordinarily* a question of fact for the jury to decide.' " 502 F.3d at 656 (emphasis added) (quoting *United States v. Bascope–Zurita,* 68 F.3d 1057, 1062 (8th Cir.1995)). This language on its face reflects that venue need not always be submitted to a jury. Moreover, *Bascope–Zurita* itself clarified, in its next sentence, that "when the relevant facts to determining venue are not disputed, the district court may resolve the issue as a matter of law." 68 F.3d at 1062. This part of *Snipes* affirmatively supports the proposition that a court may resolve venue before trial when the question is one of law and not of disputed fact.

The *Snipes* Court cited Rule 12(b) and *Torkington* to suggest limitations on a court's ability to dismiss an indictment. The quote from *Torkington* questions only dismissals based on "a determination of facts that should have been developed at trial," 812 F.2d at 1354, not dismissals based on legal determinations in the context of undisputed facts. Moreover, *Torkington* relied for the quoted proposition on *United States v. Korn,* 557 F.2d 1089 (5th Cir.1977), which continued in its next sentence that the propriety of a Rule 12(b) dismissal is "by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *Id.* at 1090 (internal quotes omitted). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* This part of *Snipes* affirmatively reflects that a court may resolve venue before trial when the question is one of law and not of disputed fact.[2]

2. Both the Supreme Court and the Eleventh Circuit have without murmur entertained appeals from pretrial denials of motions to dis-

Finally, the *Snipes* Court utilized two quotes from *Costello*. *Snipes* explicitly limited the applicability of the second quote to "preliminary trials on essential facts," 611 F.3d at 866, as opposed to preliminary determinations of legal questions. In the first quote from *Costello*, the Supreme Court merely rejected the idea that a defendant can avoid or wipe out a conviction by showing that the grand jury relied on hearsay or otherwise incompetent evidence in indicting him. 350 U.S. at 362–63, 76 S.Ct. 406. It does not, either in the context of *Costello* or that of *Snipes,* suggest that venue must go to the jury simply because the indictment alleges venue. This is especially so since the quote from *Costello* addresses only trial "on the merits" of the charge, *id.* at 363, 76 S.Ct. 406, and venue in a criminal case does not go to the merits of the charge. *Haney v. Burgess,* 799 F.2d 661, 663 (11th Cir.1986); *cf. Hohn v. United States,* 524 U.S. 236, 248, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (venue does not go the merits of a civil case); *Bryant v. Rich,* 530 F.3d 1368, 1376 (11th Cir.2008) (same).[3]

The Court notes in passing a seeming tension between the government's position and the constitutional provisions concerning venue. "The Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed...." U.S. Const. art. III, § 2, cl. 3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." *Id.* amend. VI. Both these provisions speak of the defendant's right to be tried in a correct venue, not simply the right not to be convicted in an incorrect venue. Whenever a defendant is tried in an incorrect venue despite his timely objection, his constitutional right to be tried in a correct venue is impacted. This may be unavoidable when it is only the jury's determination of the facts that establishes the impropriety of the government's chosen venue, but when as here there are no disputed facts and only legal questions concerning the significance or sufficiency of the undisputed facts, a rule that would preclude judicial resolution of venue before trial seems neither unavoidable nor particularly respectful of these constitutional guarantees.

The Court issues no definitive ruling concerning the scope of permissible pretrial challenges to venue. For present purposes, it is sufficient to state that the government's unadorned invocation of *Snipes* does not persuade the Court that it lacks discretion to address this defendant's particular challenge to venue.

**B. Offense Occurring in Multiple Districts.**

▮▮▮ Consistent with the Constitution, the Rules of Criminal Procedure provide that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R.Crim.P. 18. For purposes of determining where the offense was committed, "the locus delicti [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Rodriguez–Moreno,* 526 U.S. 275, 279, 119

---

miss for improper venue based on legal grounds. *See Travis v. United States,* 364 U.S. 631, 633, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); *United States v. Muench,* 153 F.3d 1298, 1300 (11th Cir.1998).

3. While *Snipes* described venue as "an essential element of the government's proof at trial," 611 F.3d at 865, the Eleventh Circuit had already declared venue to be a "non-essential element of a crime." *Stickle,* 454 F.3d at 1271.

S.Ct. 1239, 143 L.Ed.2d 388 (1999) (internal quotes omitted). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* The verbs used in the statute represent a "valu[able] ... interpretative tool," but there may in a given case be "other relevant statutory language," that is, language revealing other "essential conduct elements." *Id.* at 280, 119 S.Ct. 1239.

■ Counts Four and Five charge the defendant with "knowingly accept[ing] ... the proceeds of credit extended to or on behalf of" another person in connection with the other's participation in unlawful internet gambling, in violation of 31 U.S.C. § 5363. The only verb in Section 5363 reflecting an essential conduct element is "accept," and the government does not argue that other statutory language suggests additional essential conduct elements.

Instead, the government argues that acceptance is a "fluid principle" connoting more than mere receipt, which the government concedes occurred only in Louisiana. (Doc. 19 at 9). In particular, the government asserts that acceptance is a "process" that "encompasses the agreement, approval or satisfaction between the parties regarding the conditions, purpose and effect of the thing received." Using this somewhat tortured phraseology, the government reasons that the defendant's acceptance as to Count Five began when he called Rob in Alabama and told him to settle his $500 gambling debt by sending cash via FedEx. (Doc. *Id.* at 9–10).[4] Un-

der this view, venue in this District would be proper under the first paragraph of Section 3237(a), which addresses crimes initiated in one district and concluded in another.[5] The defendant counters that acceptance is equivalent to receipt and that he received the proceeds of credit only in Louisiana. (Doc. 11 at 9; Doc. 23 at 4–6).

Section 5363 was enacted only five years ago and has not been heavily litigated. The parties have cited, and the Court has located, no case or legislative history addressing the precise meaning of the undefined term "accept" within the statute. The parties instead rely on differing portions of a definition from an (outdated) legal dictionary. The defendant notes those portions defining "accept" in terms of receipt. *See Black's Law Dictionary* 12 (5th ed. 1979) ("[t]o receive with approval or satisfaction"; "to receive with intent to retain"; "receive with approval"; "Means something more than to receive, meaning ... to keep and retain."). The government cites those portions arguably more expansive. *See id.* ("[a]gree to; accede to or consent to"; "Means something more than to receive, meaning to adopt, to agree to carry out provisions....").

The government's snippets might be relevant were the defendant charged with accepting a philosophical proposition or an offer to contract, or perhaps if he were charged with agreeing to accept the proceeds of credit, but he is not. Instead, he is charged with actually accepting the proceeds of credit, a specific property. The most and indeed only natural reading of the statute under the parties' proposed

---

4. Actually, the government insists the defendant's acceptance began during his initial, pre-gambling conversation with Rob, when he first explained the procedure for paying any future debts. (Doc. 19 at 10).

5. "Except as otherwise expressly provided by enactment of Congress, any offense against

the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

definitions is that a defendant under Section 5363 must knowingly receive (possibly with approval or intent to retain) the proceeds of credit.

The Eleventh Circuit, in construing a criminal statute, has recently noted that "[t]he ordinary meaning of 'receive' is 'to knowingly accept' " (or to take possession or delivery of or to take in through the mind or senses). *United States v. Pruitt,* 638 F.3d 763, 766 (11th Cir.2011). If to "receive" means to "knowingly accept," then to "knowingly accept" must mean to "receive." This bolsters the case for the defendant's proposed definition.

A textual review of the statute likewise makes it doubtful that acceptance can occur prior to the actual delivery of the credit proceeds or other property to the defendant. A defendant may not knowingly accept credit or its proceeds *"extended* to or on behalf of" certain persons and may not knowingly accept an electronic funds transfer or funds *"transmitted* by or though a money transmitting service" from or on behalf of certain persons. 31 U.S.C. § 5363(1), (2). The use of the highlighted past tense indicates that the defendant's acceptance can occur only after the credit has been extended and only after the funds have been transmitted. While the past tense is not used in subsections (3) and (4), their wording is not such as to undermine the conclusion that acceptance occurs only after transmission to the defendant.

The act of which Section 5363 is a part defines a "restricted transaction" as "any transaction or transmittal involving any credit, funds, instrument, or proceeds described in any paragraph of section 5363 which the recipient is prohibited from accepting under section 5363." 31 U.S.C. § 5362(7). This provision underscores that it is only the actual credit, funds, instruments and proceeds which the defendant is barred from accepting. The act then tasks the Secretary and others with devising regulations requiring "designated payment systems" and their participants to take steps "to identify and block or otherwise prevent or prohibit the acceptance of restricted transactions." *Id.* § 5364(a). This provision makes sense only in the context of blocking or otherwise preventing actual transfers of property, as the regulated "financial transaction providers" could scarcely be expected to prevent persons from (as the government alleges here) reaching telephone agreements to transfer property. Because Section 5364 contemplates that acceptance can be prevented by blocking the transfer, it further supports the conclusion that acceptance occurs only by receipt at the conclusion of the transfer.

As with its decision concerning pretrial challenges to venue, the Court issues no definitive ruling on the scope of Section 5363. For present purposes, it is sufficient to state that the government's argument does not persuade the Court that the defendant could have accepted the proceeds of credit before they arrived in Louisiana. Consequently, venue over Counts Four and Five is not proper under the first paragraph of Section 3237(a).

### C. Offense Involving Transportation in Interstate Commerce.

"Any offense involving the use of the mails [or] transportation in interstate or foreign commerce ... is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce [or] mail matter ... moves." 18 U.S.C. § 3237(a). Without so much as a single citation to authority, the government argues that this second paragraph of Section 3237(a) secures venue in this District. (Doc. 19 at 8–9). The defendant, citing a D.C. Circuit case, responds that

this provision applies only when use of the mails or interstate transportation is an element of the offense. (Doc. 23 at 6–7).[6]

"[A] faithful reading of the precise words of the statute in the order in which they are written suggests that an 'offense involve[s]' transportation in interstate commerce only when such transportation is an element of the offense." *United States v. Morgan*, 393 F.3d 192, 199 (D.C.Cir.2004). The Eleventh Circuit has employed the second paragraph of Section 3237(a) when such transportation, or use of the mails, is an element of the offense charged. *See United States v. Kapordelis*, 569 F.3d 1291, 1308 (11th Cir.2009); *United States v. Bagnell*, 679 F.2d 826, 830–31 (11th Cir.1982); *United States v. Martino*, 648 F.2d 367, 400 (5th Cir.1981). Neither use of the mails nor transportation in interstate commerce is an element of the offense with which the defendant is charged, and the government does not argue otherwise.

█ The question becomes whether, and to what extent, the second paragraph of Section 3237(a) may be utilized by the prosecution when use of the mails or transportation in interstate commerce occurred but is not an element of the offense charged. The government, as noted, has cited no cases at all but merely insists without explanation that the defendant's direction to Rob to send cash by FedEx to Louisiana satisfies the statute. The Court's own review has disclosed but two Eleventh Circuit cases relying on the second paragraph of Section 3237(a) when use of the mails or transportation in interstate commerce occurred but was not an element of the offense charged, and they are easily distinguishable from the present situation.

In *United States v. McCulley*, 673 F.2d 346 (11th Cir.1982), two defendants were convicted of aiding and abetting the breaking of seals and the loosening of straps on mail pouches with the intent to steal mail, conduct that occurred on a flight from Los Angeles to Atlanta. *Id.* at 348. The Court characterized the second paragraph of Section 3237(a) as "a catchall provision designed to prevent a crime which has been committed in transit from escaping punishment for lack of venue." *Id.* at 350. It thus applies to a crime "which occurs on some form of transportation in interstate or foreign commerce." *Id.* at 349. Similarly, in *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir.2004), the defendant was charged with abusive sexual contact with a minor and with simple assault, conduct that occurred on a flight from Houston to Atlanta, and the Court applied *McCulley*. *Id.* at 1251–53. As discussed in Part I.B, the defendant did not accept the proceeds of credit while it was in transit. Nor is this a case where no venue exists outside of Section 3237(a). *McCulley* and *Breitweiser* therefore do not apply.

In *Morgan*, the defendant was charged in the District of Columbia with receipt of stolen federal property (a computer), which property he received in Maryland after it was physically transported from the District. 393 F.3d at 194. Similar to this case, there was evidence the defendant knew the shipment was coming and that he even asked a conspirator when he would be receiving his computer. *Id.* at 197. After a thorough review, the *Morgan* Court concluded that no court has ever construed the second paragraph of Section 3237(a) so expansively as to support venue in the originating district under such circumstances, and it rejected the government's position as "entirely untenable."

---

6. The defendant does not dispute that sending cash via FedEx from Alabama to Louisiana constitutes transportation in interstate commerce.

*Id.* at 200, 201. The government has not identified any flaw in *Morgan's* reasoning or explained why it is inapposite under the very similar circumstances of this case.

"Venue should not be made to depend on the chance use of the mails, when Congress has so carefully indicated the locus of the crime." *Travis v. United States,* 364 U.S. 631, 636, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).[7] As discussed in Part I.B, Congress has indicated the locus of the crime with which the defendant is charged as the place he accepts the proceeds of credit. That those proceeds happened to cross state lines· en route to the defendant does not support venue in this District.[8]

Again, the Court issues no definitive ruling on the scope of Section 3237(a). For present purposes, it is sufficient to state that the government has not shown that the offense with which the defendant is charged involves use of the mails or transportation in interstate commerce. Consequently, venue over Counts Four and Five is not proper under the second paragraph of Section 3237(a).

**D. Scope of Dismissal.**

■ Because venue as to Counts Four and Five is improperly laid in this District, these counts are subject to dismissal. E.g., *United States v. Muench,* 153 F.3d 1298, 1300 (11th Cir.1998). The defendant does not challenge venue as to the other four counts of the indictment, but he insists that, because venue is improper as to two counts, "venue is improper as to the entirety of the indictment," such that the entire indictment must be dismissed. (Doc. 11 at 9–10).

■ For this proposition, the defendant relies on *United States v. Stewart,* 256 F.3d 231 (4th Cir.2001), which states only that, "[w]hen multiple counts are alleged in an indictment, venue must be proper on each count." *Id.* at 242. It is certainly correct that improper venue as to one count cannot be rescued by proper venue as to another, but nothing in *Stewart* supports the facially illogical position that proper venue as to one count is destroyed by improper venue as to another. On the contrary, *Stewart* relied on *United States v. Bowens,* 224 F.3d 302 (4th Cir.2000), a case in which the Court threw out convictions on two counts for improper venue while affirming conviction on a third count. *Id.* at 304.

The defendant has not justified its request for dismissal of the entire indictment. The scope of potential dismissal is therefore limited to Counts Four and Five.

**II. Motion to Transfer.**

■ "Upon·the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of

---

7. *Travis* concerned the first paragraph of Section 3237(a), 364 U.S. at 633–34, 81 S.Ct. 358, but it appears equally applicable to the second. Indeed, it is noteworthy that the prosecution in *Travis* did not even attempt to argue that the defendant's offense involved use of the mails under the second paragraph, even though the prosecution focused on the defendant's deliberate act of mailing a false affidavit as the basis of venue in the district from which the affidavit was mailed. *Id.* at 633, 635, 81 S.Ct. 358.

8. The government stresses that the defendant told Rob to use FedEx when he could have told him to drive the payment to Louisiana himself. (Doc. 19 at 8–9). The point is obscure, since interstate transportation would have been used either way. To the extent the government suggests the defendant was aware that interstate transportation would be used, this cannot be significant here any more than it was in *Morgan.* To the extent the government suggests the defendant caused the use of interstate transportation, this cannot be significant here any more than was the use of the mails in *Travis.*

justice." Fed.R.Crim.P. 21(b). Such decisions are committed to the discretion of the trial court,[9] and the burden is on the moving defendant.[10]

■■■ The parties apply the factors listed in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), and on balance they favor transfer to the Eastern District of Louisiana. The defendant is of course located there, as are any witnesses he may call. The government as well intends to call witnesses from Louisiana, and the only Alabama witness it identifies is Rob. Since the government insists that the defendant can easily travel between New Orleans and Mobile, the same is equally true of Rob. The government says the case involves calls between Louisiana and Alabama, but it also involves the defendant's gambling business run out of Louisiana. This is not a document-intensive case, and many of those the government will use are in Mississippi. The only documents in Alabama are the recorded phone calls between the defendant and Rob and Rob's recorded sessions on the gambling website, and even these the government concedes can be sent with ease to Louisiana. (Doc. 19 at 16). The defendant has identified additional expense to him of trying the case in Mobile, while the government has identified no additional expense to it of trying the case in New Orleans. The defendant's original counsel is in New Orleans, though he has been replaced by local counsel. Accessibility, docket condition and disruption of business are neutral.

The defendant proposes "forum shopping" as a special consideration favoring transfer. The Court pretermits discussion of that possibility because a different consideration does so. As addressed in Part I, the government cannot try the defendant in this District on charges under Section 5363, but the defendant concedes that venue as to these counts is proper in the Eastern District of Louisiana. (Doc. 11 at 9). That district is thus the only one in which the defendant can be tried on all charges, and it would be efficient and in the interest of justice for all charges to remain consolidated for prosecution.

The defendant seeks either dismissal of the indictment in its entirety or transfer of the action in its entirety. As noted in Part I.D., he is not entitled to dismissal of the entire indictment. Therefore, the entire action, including Counts Four and Five, will be transferred to the Eastern District of Louisiana.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss for lack of venue is **denied** and his alternative motion to transfer is **granted.** This action is **transferred** to the Eastern District of Louisiana.[11]

---

**9.** *United States v. Kopituk*, 690 F.2d 1289, 1322 (11th Cir.1982); *United States v. Celaya–Garcia*, 583 F.2d 210, 211 (5th Cir.1978).

**10.** *E.g., In re: United States*, 273 F.3d 380, 389 (3rd Cir.2001); *United States v. Ghilarducci*, 220 Fed.Appx. 496, 504 (9th Cir.2007).

**11.** The defendant's motion to suppress and second motion to dismiss, (Docs. 12, 21), remain pending.